# Exhibit A

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss                                        SUPERIOR COURT DEPARTMENT

| | |
|---|---|
| Anca Adams, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>AMERICA'S TEST KITCHEN, INC. a Delaware corporation,<br><br>Defendant. | Case No.:<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

**CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff Anca Adams, individually and on behalf of all other similarly situated persons

("Plaintiff"), brings this action against America's Test Kitchen, LLC ("America's Test Kitchen"

or "Defendant") for its violations of the federal Video Privacy Protection Act, 18 U.S.C. § 2710

("VPPA" or "the Act"). Plaintiff's claims arise from Defendant's practice of knowingly

disclosing to a third party, Meta Platforms, Inc., formerly known as Facebook, Inc.

("Facebook"), "personally identifiable information" ("PII") about the videos Plaintiff and

similarly situated subscribers obtain from Defendant's websites and applications (collectively

"websites"). Plaintiff's allegations are made on personal knowledge as to Plaintiff and Plaintiff's

own acts and upon information and belief as to all other matters.

**NATURE OF THE CASE**

1.      This is a consumer privacy class action against America's Test Kitchen, for

disclosing its digital subscribers' identities and the specific video materials they obtained from

Defendant's website to Facebook, in violation of the VPPA.

2.      America's Test Kitchen is "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials," thus bringing it within the VPPA's definition of "video tape service provider." 18 U.S.C. § 2710(a)(4). Specifically, America's Test Kitchen operates a digital subscription service where subscribers may view the company's cooking videos, among other cooking resources.

3.      The VPPA prohibits "video tape service providers," such as America's Test Kitchen, from "knowingly disclos[ing]" consumers' PII, including "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

4.      America's Test Kitchen violates the VPPA by disclosing the specific videos its subscribers have requested or obtained to Facebook. Defendant discloses this information to Facebook using the "Facebook Pixel" or "Pixel"—a snippet of programming code America's Test Kitchen chose to install on its websites that sends information to Facebook. In this case, the information shared with Facebook includes the subscriber's Facebook ID ("FID") coupled with the title of the video that the subscriber watched on the America's Test Kitchen website.

5.      A subscriber's FID is a unique sequence of numbers linked to that individual's Facebook profile. Entering "facebook.com/[FID]" into a web browser returns the Facebook profile of that particular person. Thus, the FID identifies a person more precisely than a name.

6.      America's Test Kitchen discloses the subscriber's FID and viewing content to Facebook together in a single transaction. Because the subscriber's FID uniquely identifies an individual's Facebook account, Facebook—or any other person—can use the FID to quickly and easily locate, access, and view a particular subscriber's corresponding Facebook profile. In

2

simplest terms, the Pixel installed by Defendant captures and discloses to Facebook what video a specific subscriber viewed on the America's Test Kitchen website.

7.     On behalf of themselves and all similarly situated America's Test Kitchen subscribers, Plaintiff seeks an order enjoining America's Test Kitchen from further unauthorized disclosures of subscribers' PII; awarding liquidated damages in the amount of $2,500 per violation, attorneys' fees, and costs; and granting any other preliminary or equitable relief the Court deems appropriate.

## PARTIES

8.     Plaintiff Anca Adams is a citizen and resident of the State of New York.

9.     In the two years before this action was filed, Plaintiff used her Internet-connected device and web-browsing software ("browser") installed on that device to visit and watch video content on Defendant's website.

10.     Defendant America's Test Kitchen is a Delaware Corporation with its headquarters in Massachusetts at 21 Drydock Ave., Ste. 210E Boston, MA 02110. America's Test Kitchen is registered to do business in Massachusetts.

## JURISDICTION AND VENUE

11.     This Court has personal jurisdiction over America's Test Kitchen because it regularly conducts business throughout Massachusetts and has its principal place of business at 21 Drydock Ave., Ste. 210E Boston, MA 02110. M.G.L. c. 223A, § 2; M.G.L. c. 223A, § 3.

12.     Venue is appropriate in this Court because America's Test Kitchen's principal place of business is in Suffolk County and the acts or conduct giving rise to the cause of action asserted herein took place in Suffolk County. M.G.L. c. 223, § 1.

## COMMON FACTUAL ALLEGATIONS

### A.      Background of the VPPA

13.      With certain exceptions that are inapplicable here, the VPPA prohibits "a video tape service provider," from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider[.]" 18 U.S.C. § 2710(b)(1).

14.      The VPPA was passed in 1988 for the explicit purpose of protecting the privacy of individuals' and their families' video rental, purchase, and viewing data. Leading up to its enactment, members of the United States Senate warned that "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes." S. Rep. No. 100-599 at 7-8 (1988).

15.      While these statements were true in 1988 when the VPPA was passed, the importance of legislation like the VPPA in the modern era of datamining is more pronounced than ever before. During a recent Senate Judiciary Committee meeting, "The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century," Senator Patrick Leahy emphasized that point by stating: "While it is true that technology has changed over the years, we must stay faithful to our fundamental right to privacy and freedom. Today, social networking, video streaming, the 'cloud,' mobile apps and other new technologies have revolutionized the availability of Americans' information."[1]

16.       In this case, Defendant chose to deprive Plaintiff and the Class members of that right by systematically disclosing their PII to Facebook.

---

[1] The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century, Senate Judiciary Committee Subcommittee on Privacy, Technology and the Law, https://www.judiciary.senate.gov/meetings/the-video-privacy-protection-act-protecting-viewer-privacy-in-the-21st-century.

Date Filed 7/18/2022 4:36 PM
Superior Court - Suffolk
Docket Number

**B.    America's Test Kitchen Designed its Website to Disclose Users' PII,
Including Video Viewing Activity, to Facebook.**

17.    America's Test Kitchen operates a website in the U.S. accessible from a desktop

and mobile device at https://www.americastestkitchen.com/.

18.    In programing its website, America's Test Kitchen installed the Facebook Pixel,

thus making the knowing choice to track subscribers' PII and send it to Facebook.

19.    America's Test Kitchen allows consumers to become digital subscribers to its

cooking videos and content through its website. To subscribe, the consumer must provide his or

her name, email address, billing address, and credit- or debit-card information.

20.    After completing the subscription process and gaining access to Defendant's

videos, America's Test Kitchen discloses to Facebook, through the Facebook Pixel, the FID of

the subscriber and the specific video the subscriber viewed.

**C.    How America's Test Kitchen Discloses Digital Subscribers' PII.**

21.    Businesses like Defendant have the option of installing the Facebook Pixel on

their websites. Doing so enables the business to collect information about how users interact with

the business's website, such as whether they initiate purchases on the website, what items they

look at, and, relevant here, the content the users view on a particular webpage.

22.    The Facebook Pixel is a unique string of code businesses can embed on their

websites allowing them to track consumers' actions and report the actions back to Facebook.

23.    The Pixel can follow a consumer to different websites and across the Internet

even after clearing of browser history.

5

24.     The Pixel allows Facebook to build detailed profiles about a website's users as those users browse the web, so targeted advertisements can be served upon the users.[2]

25.     To take advantage of advertising and information services offered by Facebook, Defendant programmed the America's Test Kitchen website to include a Facebook Pixel.

26.     When an America's Test Kitchen subscriber watches videos on Defendant's website, the Pixel installed by Defendant sends to Facebook certain information about the viewer and what the viewer watched. Specifically, America's Test Kitchen sends to Facebook the video content name, its URL, and the subscriber's FID.

27.     An FID is a unique and persistent identifier that Facebook assigns to each of its users. With it, anyone can look up the user's unique Facebook profile. Simply put, with only an FID and the video content name and URL—all which Defendant knowingly provides to Facebook—any ordinary person could learn the identity of the digital subscriber and the specific video or media content she requested on the America's Test Kitchen website.

28.     Defendant could easily program its website so this information is not disclosed to Facebook.

29.     At all relevant times, Defendant knew that the Facebook Pixel disclosed PII to Facebook. This is evidenced from, among other things, the functionality of the Pixel, including that the Pixels' sharing of information with Facebook enabled Defendant's website to show targeted advertising to its digital subscribers based on the content those digital subscribers had viewed on the website, including videos.

---

[2] The Markup, *How We Built a Meta Pixel Inspector*. https://themarkup.org/show-your-work/2022/04/28/how-we-built-a-meta-pixel-inspector (accessed 6/22/22).

30.     As relevant here, America's Test Kitchen disclosed to Facebook the video title

and FID in a single transmission, through the Facebook Pixel as depicted below[3]:



*Figure 1*

31.     In this example, Jane Vppa is watching Defendant's video entitled "Italian Pasta

Salad."

---

[3] For the purposes of demonstrating in this Complaint America's Test Kitchen's practice of
sharing consumers personally identifying information, an exemplary account for "Jane Vppa"
was created and utilized.

32.     The FID is displayed in the "c_user" code. In this example the code is

100082948383940:



*Figure 2*

33.     In this example, the disclosure of the FID is coupled with the title of the video the

subscriber watched along with the URL for the video:



*Figure 3*

34.     Any person can specifically identify the user viewing the "Italian Pasta Salad"

video by simply entering "facebook.com/100082948383940" into their search bar:



*Figure 4*

35.     Upon pressing enter or search, the following page automatically appears:

8



*Figure 5*

36. America's Test Kitchen violates the VPPA by knowingly disclosing subscribers' FIDs, together with their viewing content, to Facebook.

## PLAINTIFF-SPECIFIC ALLEGATIONS

37.     Plaintiff Anca Adams is an America's Test Kitchen subscriber and a Facebook user. She has been an America's Test Kitchen subscriber since 2016.

38.     Ms. Adams consistently paid America's Test Kitchen a subscription fee each year since 2016.

39.     Ms. Adams watched video content through her America's Test Kitchen subscription many times in the two years preceding the filing of this action.

40.     Plaintiff has had a Facebook account since approximately 2004. America's Test Kitchen disclosed to Facebook her FID coupled with the title of the videos she watched and the URLs to access those videos.

9

41.     Each time Defendant disclosed her PII to Facebook, it violated her rights under

the VPPA.

## CLASS ALLEGATIONS

42.     Plaintiff brings this lawsuit under the Rules 23(a) and (b) of the Massachusetts

Rules of Civil Procedure on behalf of the following Class:

> All persons in the United States who subscribed to America's Test Kitchen, viewed video
> content on a website or application operated by America's Test Kitchen, and used
> Facebook during the time Facebook's Pixel was active on America's Test Kitchen.

43.     The "Class Period" is from July 13, 2020, to the present.

44.     Excluded from the Class is Defendant, any controlled person of Defendant, as

well as the officers and directors of Defendant and the immediate family members of any such

person. Also excluded is any judge who may preside over this cause of action and the immediate

family members of any such person. Plaintiff reserves the right to modify, change, or expand the

Class definition based upon discovery and further investigation.

45.     **Numerosity**: The Class consists of at least hundreds of individuals, making

joinder impractical.

46.     **Commonality and Predominance**: Common questions of law and fact exist with

regard to the claim and predominate over questions affecting only individual Class members.

Questions common to the Class include:

A.      Whether America's Test Kitchen knowingly disclosed Plaintiff's and Class

members' PII to Facebook;

B.      Whether America's Test Kitchen's conduct violates the Video Privacy Protection

Act, 18 U.S.C. § 2710; and

C.      Whether America's Test Kitchen should be enjoined from disclosing Plaintiff's
and Class members' PII.

47.      **Typicality:** Plaintiff's claims are typical of the claims of the Class members in
that Plaintiff, like all Class members, has been injured by America's Test Kitchen's
misconduct—disclosing consumers' PII to Facebook.

48.      **Adequacy of Representation**: Plaintiff will fairly and adequately represent and
protect the interests of the Class. Plaintiff has retained counsel with substantial experience in
prosecuting complex litigation and class actions, including privacy-protection cases. Plaintiff
does not have any interests antagonistic to those of the Class.

49.      **Superiority:** A class action is superior to other available methods for the fair and
efficient adjudication of this controversy. Class-wide damages are essential to induce America's
Test Kitchen to comply with federal law. Moreover, because the amount of each individual Class
member's claim is small relative to the complexity of the litigation, and because of America's
Test Kitchen's financial resources, Class members are unlikely to pursue legal redress
individually for the violations detailed in this complaint. A class action will allow these claims to
be heard where they would otherwise go unheard because of the expense of bringing individual
lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive
supervision by a single court.

### CAUSE OF ACTION
### Violation of the Video Privacy Protection Act
### 18 U.S.C. § 2710

50.      Plaintiff incorporates and realleges the above factual allegations by reference.

51.      The VPPA prohibits a "video tape service provider" from knowingly disclosing
"personally identifying information" concerning any "consumer" to a third-party without the

11

"informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C. § 2710.

52.     As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials[.]" America's Test Kitchen is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because it is engaged in the business of delivering audiovisual materials that are similar to prerecorded video cassette tapes and those sales affect interstate or foreign commerce.

53.     As defined in 18 U.S.C. § 2710(a)(1), a "'consumer' means any renter, purchaser, or subscriber of goods or services from a video tape service provider." As alleged above, Plaintiff and Class members are subscribers to Defendant's service of providing video content. Thus, Plaintiff and Class members are "consumers" under this definition.

54.     As defined in 18 U.S.C. § 2710(a)(3), "'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

55.     America's Test Kitchen knowingly disclosed Plaintiff's and Class members' PII—specifically, their FIDs and the title and URL of the videos they requested or obtained—to Facebook.

56.     This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified Plaintiff and each Class member to Facebook as an individual who viewed Defendant's video content, including the specific video materials watched on Defendant's website. Indeed, anyone with an FID could identify the individual associated with it simply by entering "facebook.com/[FID]" into a web browser.

57.     Defendant never obtained from Plaintiff, or any Class member informed, written consent. More specifically, Defendant never obtained from Plaintiff or any Class member informed, written consent in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; Defendant never obtained from Plaintiff or any Class member informed, written consent that, at the election of the consumer, was given at the time the disclosure is sought or was given in advance for a set period of time, not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner; and Defendant never provided an opportunity, in a clear and conspicuous manner, for Plaintiff or any Class member to withdraw consent on a case-by-case basis or to withdraw consent from ongoing disclosures, at the consumer's election. *See* 18 U.S.C. § 2710(b)(2).

58.     Defendant's disclosures were made knowingly, as it programmed the Facebook Pixel into its website code, knowing that Facebook would receive video titles and the subscriber's FID when a subscriber watched a video.

59.     By disclosing Plaintiff's and Class members' PII, America's Test Kitchen violated Plaintiff's and Class members' statutorily protected right to privacy in their video-watching habits. 18 U.S.C. § 2710(c).

60.     As a result of these violations, America's Test Kitchen is liable to Plaintiff and Class members.

61.     On behalf of herself and all members of the Class, Plaintiff seeks to enjoin Defendant's disclosures of PII; liquidated damages in the amount of $2,500 per Class member; reasonable attorneys' fees and costs; and all other preliminary or equitable relief the Court deems appropriate. 18 U.S.C. § 2710(c)(2)(A).

13

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated,

respectfully requests that the Court:

i.        Certify this case as a class action, and appoint Plaintiff as Class Representative

and the undersigned attorneys as Class Counsel;

ii.       Enter judgment in favor of Plaintiff and the Class;

iii.      Enjoin Defendant's future disclosures of Plaintiff's and Class members' PII;

iv.       Award Plaintiff and Class members liquidated damages they are entitled to under

the VPPA;

v.        Award Plaintiff and Class members pre- and post-judgment interest as provided

by law;

vi.       Award Plaintiff and Class members reasonable litigation expenses and attorneys'

fees as permitted by law; and

vii.      Award such other and further relief as the Court deems necessary and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Massachusetts Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury

of all issues triable as of right.

Dated: July 13, 2022

Respectfully submitted,

*/s/ Elizabeth Ryan*
Elizabeth Ryan (BBO No. 549632)
BAILEY & GLASSER LLP
176 Federal Street, 5th Floor
Boston, MA 02110
(617) 439-6730
(617) 951-3954 Fax
eryan@baileyglasser.com

14

Joseph Henry (Hank) Bates, III
(*pro hac vice* forthcoming)
CARNEY BATES & PULLIAM, PLLC
519 W. 7th Street
Little Rock, AR 72201
(501) 312-8500
(501) 312-8505 Fax
hbates@cbplaw.com

15