## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Anca Adams, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>AMERICA'S TEST KITCHEN, LP, a Massachusetts Partnership; AMERICA'S TEST KITCHEN, INC., a Delaware Corporation; and Jackie Ford,<br><br>Defendants. | Case No.: 1:22-CV-11309 (AK)<br><br>AMENDED CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

**AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff Anca Adams ("Plaintiff"), individually and on behalf of all other similarly situated persons, brings this action against America's Test Kitchen, LP, and its general partners America's Test Kitchen, Inc. and Jackie Ford (collectively "Defendants") for their violations of the federal Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA" or "the Act"). Plaintiff's claims arise from Defendants' practice of knowingly disclosing to a third party, Meta Platforms, Inc., formerly known as Facebook, Inc. ("Facebook"), "personally identifiable information" ("PII") about the videos Plaintiff and similarly situated subscribers request or obtain from Defendants' America's Test Kitchen website. Plaintiff's allegations are made on personal knowledge as to Plaintiff and Plaintiff's own acts and upon information and belief as to all other matters.

### NATURE OF THE CASE

1. This is a consumer privacy class action against Defendants, for disclosing their digital subscribers' identities and the specific video materials they request or obtain from Defendants' America's Test Kitchen website to Facebook, in violation of the VPPA.

2. Defendants, through operation of the America's Test Kitchen website, are "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials," thus bringing it within the VPPA's definition of "video tape service provider." 18 U.S.C. § 2710(a)(4). Specifically, Defendants operate a digital subscription service where subscribers may request or obtain America's Test Kitchen cooking videos, among other cooking resources.

3. The VPPA prohibits "video tape service providers," such as Defendants, from "knowingly disclos[ing]" consumers' PII, including "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

4. Defendants violate the VPPA by disclosing the specific videos subscribers to America's Test Kitchen have requested or obtained to Facebook. Defendants disclose this information to Facebook using the "Facebook Pixel" or "Pixel"—a snippet of programming code Defendants chose to install on the America's Test Kitchen website that sends information to Facebook. In this case, the information shared with Facebook includes the subscriber's Facebook ID ("FID") coupled with the title of the video that the subscriber requested or obtained on the America's Test Kitchen website.

5. A subscriber's FID is a unique sequence of numbers linked to that individual's Facebook profile. Entering "facebook.com/[FID]" into a web browser returns the Facebook profile of that particular person. Thus, the FID identifies a person more precisely than a name.

6. Defendants disclose the subscriber's FID and content she requested or obtained to Facebook together in a single transaction. Because the subscriber's FID uniquely identifies an individual's Facebook account, Facebook—or any other person—can use the FID to quickly and

easily locate, access, and view a particular subscriber's corresponding Facebook profile. In simplest terms, the Pixel installed by Defendants captures and discloses to Facebook what video a specific subscriber requested or obtained on the America's Test Kitchen website.

7. On behalf of themselves and all similarly situated America's Test Kitchen subscribers, Plaintiff seeks an order enjoining Defendants from further unauthorized disclosures of subscribers' PII; awarding liquidated damages in the amount of $2,500 per violation; attorneys' fees and costs; and granting any other preliminary or equitable relief the Court deems appropriate.

## PARTIES

8. Plaintiff Anca Adams is a citizen and resident of the State of New York.

9. In the two years before this action was filed, Plaintiff used her Internet-connected device and web-browsing software ("browser") installed on that device to visit and request or obtain pre-recorded video content on Defendants' America's Test Kitchen website.

10. Defendant America's Test Kitchen, LP is a Massachusetts Limited Partnership with its headquarters in Massachusetts at 21 Drydock Ave., Ste 210E, Boston, MA 02210. America's Test Kitchen, LP is registered to do business in Massachusetts.

11. Defendant America's Test Kitchen, Inc. is registered as a general partner of America's Test Kitchen, LP. It is a Delaware Corporation with its headquarters also in Massachusetts at 21 Drydock Ave., Ste. 210E, Boston, MA 02210. America's Test Kitchen, Inc. is registered to do business in Massachusetts. America's Test Kitchen, Inc. is authorized to sue and be sued on behalf of America's Test Kitchen, LP. *Americas Test Kitchen Inc. General Partner of Americas Test Kitchen Ltd. Ptnr vs. Kimball, Christopher*, 1684CV03325, (Mass. Super. Oct. 31, 2016).

12. Jackie Ford is registered twice as the only other general partner of America's Test Kitchen, LP, and also has a primary business location of 21 Drydock Ave., Ste. 210E, Boston, MA 02210.

## JURISDICTION AND VENUE

13. This Court has federal question jurisdiction over the Action because it states a claim under the Video Privacy Protection Act, 18 U.S.C. § 2710, and is therefore a "civil action[] arising under the . . . laws . . . of the United States," 28 U.S.C. § 1331.

14. This Court has personal jurisdiction over each Defendant because each Defendant regularly conducts business throughout this District, and each has its principal place of business in this district.

15. Venue is proper in this District under 28 U.S.C. § 1391, as a substantial portion of the conduct giving rise to Plaintiff's claims occurred in this District. Each defendant transacts business in this District and resides in this District.

## COMMON FACTUAL ALLEGATIONS

A.  **Background of the VPPA**

16. With certain exceptions that are inapplicable here, the VPPA prohibits "a video tape service provider," from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider[.]" 18 U.S.C. § 2710(b)(1).

17. The VPPA was passed in 1988 for the explicit purpose of protecting the privacy of individuals' and their families' video rental, purchase, and viewing data. Leading up to its enactment, members of the United States Senate warned that "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes." S. Rep. No. 100-599 at 7-8 (1988).

18. While these statements were true in 1988 when the VPPA was passed, the importance of legislation like the VPPA in the modern era of datamining is more pronounced than ever before. During a recent Senate Judiciary Committee meeting, "The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century," Senator Patrick Leahy emphasized that point by stating: "While it is true that technology has changed over the years, we must stay faithful to our fundamental right to privacy and freedom. Today, social networking, video streaming, the 'cloud,' mobile apps and other new technologies have revolutionized the availability of Americans' information."[1]

19. In this case, Defendants chose to deprive Plaintiff and the Class members of that right by systematically disclosing their PII to Facebook.

**B.     Defendants Designed the America's Test Kitchen Website to Disclose Users' PII, Including Video Viewing Activity, to Facebook.**

20. America's Test Kitchen operates a website in the U.S. accessible from a desktop and mobile device at https://www.americastestkitchen.com/.

21. In programing the America's Test Kitchen website, Defendants installed the Facebook Pixel, thus making the knowing choice to track subscribers' PII and send it to Facebook.

22. America's Test Kitchen allows consumers to become digital subscribers to its cooking videos and content through its website. To subscribe, the consumer must provide his or her name, email address, billing address, and credit- or debit-card information.

---

[1] The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century, Senate Judiciary Committee Subcommittee on Privacy, Technology and the Law, https://www.judiciary.senate.gov/meetings/the-video-privacy-protection-act-protecting-viewer-privacy-in-the-21st-century.

23.     After completing the subscription process and gaining access to Defendants' videos on the America's Test Kitchen website, Defendants disclose to Facebook, through the Facebook Pixel, the FID of the subscriber and the specific video the subscriber requested or obtained.

**C.      How America's Test Kitchen Discloses Digital Subscribers' PII.**

24.     Businesses like Defendants have the option of installing the Facebook Pixel on their website. Doing so enables the business to collect information about how users interact with the business's website, such as whether they initiate purchases on the website, what items they look at, and, relevant here, the content the users request or obtain on a particular webpage.

25.     The Facebook Pixel is a unique string of code businesses can embed on their website allowing them to track consumers' actions and report the actions back to Facebook.

26.     The Pixel can follow a consumer to different website and across the Internet even after clearing of browser history.

27.     The Pixel allows Facebook to build detailed profiles about a website's users as those users browse the web, so targeted advertisements can be served upon the users.[2]

28.     To take advantage of advertising and information services offered by Facebook, Defendants programmed the America's Test Kitchen website to include a Facebook Pixel.

29.     When an America's Test Kitchen subscriber requests or obtains videos on Defendants' website, the Pixel installed by Defendants sends to Facebook certain information about the viewer and what the viewer requested or obtained. Specifically, Defendants send to Facebook the video content name, its URL, and the subscriber's FID.

30.     An FID is a unique and persistent identifier that Facebook assigns to each of its users. With it, anyone can look up the user's unique Facebook profile. Simply put, with only an

---

[2] The Markup, *How We Built a Meta Pixel Inspector*. https://themarkup.org/show-your-work/2022/04/28/how-we-built-a-meta-pixel-inspector (accessed 6/22/22).

6

FID and the video content name and URL—all which Defendants knowingly provide to Facebook—any ordinary person could learn the identity of the digital subscriber and the specific video or media content she requested or obtained on the America's Test Kitchen website.

31.     Defendants could easily program the America's Test Kitchen website so this information is not disclosed to Facebook.

32.     At all relevant times, Defendants knew that the Facebook Pixel disclosed PII to Facebook. This is evidenced from, among other things, the functionality of the Pixel, including that the Pixels' sharing of information with Facebook enabled Defendants' website to show targeted advertising to its digital subscribers based on the content those digital subscribers had requested or obtained on the website, including videos.

33.     As relevant here, Defendants disclosed to Facebook the video title and FID in a single transmission, through the Facebook Pixel as depicted below[3]:

---

[3] For the purposes of demonstrating in this Complaint America's Test Kitchen's practice of sharing consumers personally identifying information, an exemplary account for "Jane Vppa" was created and utilized.



*Figure 1*

34.    In this example, Jane Vppa is requesting or obtaining Defendants' video entitled "Italian Pasta Salad."

35.    The FID is displayed in the "c_user" code. In this example the code is 100082948383940:



*Figure 2*

36.    In this example, the disclosure of the FID is coupled with the title of the video the subscriber requested or obtained along with the URL for the video:

8



*Figure 3*

37.     Any person can specifically identify the user requesting or obtaining the "Italian Pasta Salad" video by simply entering "facebook.com/100082948383940" into their search bar:



*Figure 4*

38.     Upon pressing enter or search, the following page automatically appears:



*Figure 5*

9

39. Defendants violate the VPPA by knowingly disclosing subscribers' FIDs, together with the content they request or obtain, to Facebook.

## PLAINTIFF-SPECIFIC ALLEGATIONS

40. Plaintiff Anca Adams is an America's Test Kitchen subscriber and a Facebook user. She has been an America's Test Kitchen subscriber since 2016.

41. Ms. Adams consistently paid America's Test Kitchen a subscription fee each year since 2016.

42. Ms. Adams requested or obtained pre-recorded video content through her America's Test Kitchen subscription many times in the two years preceding the filing of this action.

43. Plaintiff has had a Facebook account since approximately 2004. Defendants disclosed to Facebook her FID coupled with the title of the videos she requested and obtained and the URLs to access those videos.

44. Each time Defendants disclosed her PII to Facebook, they violated her rights under the VPPA.

## CLASS ALLEGATIONS

45. Plaintiff brings this lawsuit under the Rules 23(a) and (b) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons in the United States who subscribed to Defendants' America's Test Kitchen website, requested or obtained video content on a website operated by Defendants, and used Facebook during the time Facebook's Pixel was active on Defendants' website.

46. The "Class Period" is from July 13, 2020, to the present.

47. Excluded from the Class are Defendants, any controlled person of Defendants, as well as the officers and directors of Defendants and the immediate family members of any such

person. Also excluded is any judge who may preside over this cause of action and the immediate family members of any such person. Plaintiff reserves the right to modify, change, or expand the Class definition based upon discovery and further investigation.

48. **Numerosity**: The Class consists of at least hundreds of individuals, making joinder impractical.

49. **Commonality and Predominance**: Common questions of law and fact exist with regards to the claim and predominate over questions affecting only individual Class members. Questions common to the Class include:

A. Whether Defendants knowingly disclosed Plaintiff's and Class members' PII to Facebook;

B. Whether Defendants' conduct violates the Video Privacy Protection Act, 18 U.S.C. § 2710; and

C. Whether Defendants should be enjoined from disclosing Plaintiff's and Class members' PII.

50. **Typicality:** Plaintiff's claims are typical of the claims of the Class members in that Plaintiff, like all Class members, has been injured by Defendants' misconduct—disclosing consumers' PII to Facebook.

51. **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, including privacy-protection cases. Plaintiff does not have any interests antagonistic to those of the Class.

52. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendants

to comply with federal law. Moreover, because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and because of Defendants' financial resources, Class members are unlikely to pursue legal redress individually for the violations detailed in this complaint. A class action will allow these claims to be heard where they would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

53.     **Injunctive Relief**.  Plaintiff also satisfies the requirements for maintaining a class under Rule 23(b)(2).  Defendants acted on grounds that apply generally to the proposed Classes, making final declaratory or injunctive relief appropriate with respect to the proposed Classes as a whole.

54.     **Particular Issues.**  Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(c)(4). Her claim consists of particular issues that are common to all Class members and are capable of class-wide resolution that will significantly advance the litigation.

## CAUSE OF ACTION
### Violation of the Video Privacy Protection Act
### 18 U.S.C. § 2710

55.     Plaintiff incorporates and realleges the above factual allegations by reference.

56.     The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally identifying information" concerning any "consumer" to a third-party without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C. § 2710.

57.     As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials[.]" Defendants are

"video tape service providers" as defined in 18 U.S.C. § 2710(a)(4) because they are engaged in the business of delivering audiovisual materials that are similar to prerecorded video cassette tapes and those sales affect interstate or foreign commerce.

58.   As defined in 18 U.S.C. § 2710(a)(1), a "'consumer' means any renter, purchaser, or subscriber of goods or services from a video tape service provider." As alleged above, Plaintiff and Class members are subscribers to Defendants' service of providing video content. Thus, Plaintiff and Class members are "consumers" under this definition.

59.   As defined in 18 U.S.C. § 2710(a)(3), "'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

60.   Defendants knowingly disclosed Plaintiff's and Class members' PII—specifically, their FIDs and the title and URL of the videos they requested or obtained—to Facebook.

61.   This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified Plaintiff and each Class member to Facebook as an individual who requested or obtained Defendants' video content, including the specific video materials requested or obtained on Defendants' website. Indeed, anyone with an FID could identify the individual associated with it simply by entering "facebook.com/[FID]" into a web browser.

62.   Defendants never obtained from Plaintiff or any Class member informed, written consent. More specifically, Defendants never obtained from Plaintiff or any Class member informed, written consent in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; Defendants never obtained from Plaintiff or any Class member informed, written consent that, at the election of the consumer, was given at the time the disclosure is sought or was given in advance for a set period of time, not to exceed two years or

until consent is withdrawn by the consumer, whichever is sooner; and Defendants never provided an opportunity, in a clear and conspicuous manner, for Plaintiff or any Class member to withdraw consent on a case-by-case basis or to withdraw consent from ongoing disclosures, at the consumer's election. *See* 18 U.S.C. § 2710(b)(2).

63. Defendants' disclosures were made knowingly, as it programmed the Facebook Pixel into its website code, knowing that Facebook would receive video titles and the subscriber's FID when a subscriber requested or obtained a video.

64. By disclosing Plaintiff's and Class members' PII, Defendants violated Plaintiff's and Class members' statutorily protected right to privacy in their video-requesting or obtaining habits. 18 U.S.C. § 2710(c).

65. As a result of these violations, Defendants are liable to Plaintiff and Class members.

66. On behalf of herself and all members of the Class, Plaintiff seeks to enjoin Defendants' disclosures of PII; liquidated damages in the amount of $2,500 per Class member; reasonable attorneys' fees and costs; and all other preliminary or equitable relief the Court deems appropriate. 18 U.S.C. § 2710(c)(2)(A).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court:

   i. Certify this case as a class action, and appoint Plaintiff as Class Representative and the undersigned attorneys as Class Counsel;

   ii. Enter judgment in favor of Plaintiff and the Class;

   iii. Enjoin Defendants' future disclosures of Plaintiff's and Class members' PII;

iv. Award Plaintiff and Class members liquidated damages they are entitled to under the VPPA;

v. Award Plaintiff and Class members pre- and post-judgment interest as provided by law;

vi. Award Plaintiff and Class members reasonable litigation expenses and attorneys' fees as permitted by law; and

vii. Award such other and further relief as the Court deems necessary and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues triable as of right.

Dated: October 21, 2022    Respectfully submitted,

/s/ Hank Bates
Hank Bates (*pro hac vice*)
Lee Lowther (*pro hac vice*)
Courtney Ross (*pro hac vice*)
CARNEY BATES & PULLIAM, PLLC
519 W. 7th Street
Little Rock, AR 72201
Tel: (501) 312-8500
Fax: (501) 312-8505
Email: hbates@cbplaw.com
       llowther@cbplaw.com
       cross@cbplaw.com

Elizabeth Ryan (BBO No. 549632)
BAILEY & GLASSER LLP
176 Federal Street, 5th Floor
Boston, MA 02110
Tel: (617) 439-6730
Fax: (617) 951-3954
Email: eryan@baileyglasser.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 21, 2022, a true and correct copy of the foregoing was electronically filed with the Court's CM/ECF system and was thus served automatically upon all counsel of record in this matter.

*/s/ Hank Bates*
Hank Bates