# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| **ANCA ADAMS,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 1:22-CV-11309-AK** |
| **AMERICA'S TEST KITCHEN, LP,** | |
| **AMERICA'S TEST KITCHEN, INC.,** | |
| **AND JACKIE FORD,** | |
| **Defendants.** | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR**
**<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

### TABLE OF CONTENTS

I.     INTRODUCTION. ........................................................................................... 1

II.    PROCEDURAL BACKGROUND ................................................................. 3

III.   SUMMARY OF THE SETTLEMENT TERMS ............................................ 5

   A.  The Settlement Class Encompasses Everyone Injured by the Privacy Intrusions Plaintiff
       Alleges Within the Statute of Limitations Period. ................................................. 5

   B.  The Settlement Provides for Significant Remedial Measures and Injunctive Relief. .......... 6

   C.  The Settlement Release Is Adequately Tailored in Scope and Does Not Release Settlement
       Class Members' Damages Claims ............................................................................ 6

   D.  The Settlement Administrator ............................................................................... 7

   E.  The Proposed Notice Program Is Calculated to Afford Ample Notice. ........................... 7

   F.  Counsel Will Apply for a Class Representative Service Award. .................................... 8

   G.  Plaintiff's Counsel Application for Attorneys' Fees and Reimbursement of Litigation
       Expenses. ........................................................................................................... 8

IV.    PROPOSED SCHEDULE OF EVENTS ....................................................... 9

V.     LEGAL STANDARD .................................................................................. 10

VI.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ......... 11

   A.  The Settlement Is Fundamentally Fair, Reasonable, and Adequate. ............................. 11

      1.   The Settlement Class Has Been Vigorously Represented. ..................................... 11

      2.   The Settlement Was Negotiated at Arm's-Length After the Exchange of Informal
           Discovery ...................................................................................................... 13

      3.   The Settlement Provides Meaningful Relief to the Class. ..................................... 14

         a.   The Costs, Risks, and Delay of Trial and Appeal. ......................................... 15

         b.   Effectiveness of Any Proposed Method of Distributing Relief and Any Agreement
              Required to Be Identified. ......................................................................... 16

         c.   The Terms of any Proposed Award of Attorney's Fees. ................................. 17

      4.   The Settlement Treats Settlement Class Members Equitably. ................................ 17

VII.   THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS. 18

   A.  The Class Is Sufficiently Numerous. .................................................................... 19

   B.  Several Questions of Law and Fact Are Common to the Class. ................................... 19

   C.  The Class Representative's Claim Is Typical of the Settlement Class Members. ............. 20

   D.  The Proposed Class Representative and Class Counsel Have and Will Continue to Fairly
       and Adequately Represent the Settlement Class. .................................................... 21

   E.  The Class Satisfies Rule 23(b)(2). ....................................................................... 22

i

5.   Plaintiff's Counsel Should be Appointed Class Counsel. ............................................ 24

6.   The Notice Program Is Adequate. ............................................................................ 25

VIII.  CONCLUSION .......................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Andrews v. Bechtel Power Corp.*,
   <u>780 F.2d 124</u> (1st Ci<u>r. 1985</u>) ................................................. 21

*Bertella v. JetDirect Aviation, Inc.*,
   No. 09-cv-10527, <u>2010 WL 4103664</u> (D. Mass. Oct. 19, 2010) ...................................... 21, 22

*Bezdek v. Vibram USA Inc.*,
   <u>79 F. Supp. 3d 324</u> (D. Mass.), *aff'd*, <u>809 F.3d 78</u> (1st Ci<u>r. 2015</u>) ......................................... 22

*Briggs, et. al., v. Mass. Dept. of Correction et. al.*,
   No. CV 15-40162-GAO, <u>2021 WL 3711406</u> (D. Mass. Aug. 20, 2021) .................................. 23

*Bussie Bussie v. Allmerica Financial Corp.*,
   <u>50 F. Supp. 2d 59</u> (D. Mass. 1999) .................................................. 18, 22

*City of Detroit v. Grinnell Corp.,*
   <u>495 F.2d 448</u> (2d Ci<u>r.1974</u>) .................................................. 10, 16

*Cohen v. Brown Univ.*,
   <u>16 F.4th 935</u> (1st Ci<u>r. 2021</u>) .................................................. 10, 19

*Del Sesto v. Prospect Chartercare, LLC*,
   No. 18-cv-00328, <u>2019 WL 2162083</u> (D.R.I. May 17, 2019) ........................................... 18

*DeRosa v. Mass. Bay Commuter Rail Co.*,
   <u>694 F. Supp. 2d 87</u> (D. Mass. 2010) .................................................. 19

*Diaz v. Google LLC*,
   No. 5:21-cv-3080 (N.D. Cal. Oct. 31, 2022) .................................................. 23

*Donovan v. Philip Morris USA, Inc.,*
   No. CIV.A. 06-12234-DJC, <u>2012 WL 957633</u> (D. Mass. Ma<u>r. 21</u>, <u>2012</u>) .............................. 23

*Gaston v. LexisNexis Risk Solutions, Inc.*,
   <u>483 F. Supp. 3d 318</u> (W.D.N.C. 2020) .................................................. 24

*In re Credit Suisse-AOL Sec. Litig.*,
   <u>253 F.R.D. 17</u> (D. Mass. 2008) .................................................. 20

*In re Lupron(R) Mktg. & Sales Practices Litig.*,
   <u>228 F.R.D. 75</u> (D. Mass. 2005) .................................................. 10, 11

*In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*,
    270 F.R.D. 45 (D. Mass. 2010) ................................................................. 19

*In re Organogenesis Sec. Litig.*,
    241 F.R.D. 397 (D. Mass. 2007) ............................................................... 22

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    588 F.3d 24 (1st Cir. 2009) ................................................................ 11, 13

*Jermyn v. Best Buy Stores, L.P.*,
    No. 08 CIV. 214 CM, 2012 WL 2505644 (S.D.N.Y. June 27, 2012) ................. 23

*Kinder v. Meredith Corp.*,
    No. 14-cv-11284, 2016 WL 454441 (E.D. Mich. Feb. 5, 2016) ....................... 20

*Lazar v. Pierce*,
    757 F.2d 435 (1st Cir. 1985) .................................................................. 11

*Meaden v. HarborOne Bank*,
    No. 23-cv-10467, 2023 WL 3529762 (D. Mass. May 18, 2023) ......... 13, 19, 20, 21

*Nat'l Ass'n of Deaf v. Mass. Inst. of Tech.*,
    No. 15-cv-30024, 2020 WL 1495903 (D. Mass. Mar. 27, 2020) ..................... 13

*New England Biolabs, Inc. v. Miller*,
    No. 1:20-CV-11234-RGS, 2022 WL 20583575 (D. Mass. Oct. 26, 2022) ........... 23

*Ouadani v. Dynamex Operations E., LLC*,
    405 F. Supp. 3d 149 (D. Mass. 2019) ....................................................... 20

*Quadrelli v. Moniz*,
    No. 20-CV-10685-ADB, 2020 WL 3051778 (D. Mass. June 8, 2020) ............... 23

*Roberts v. TJX Cos., Inc.*,
    No. 13-cv-13142, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) .................. 13, 14

*Rolland v. Cellucci*,
    191 F.R.D. 3 (D. Mass. 2000) ................................................................. 18

*Selby v. Principal Mut. Life Ins. Co.*,
    No. 98 CIV. 5283(RLC), 2003 WL 22772330 (S.D.N.Y. Nov. 21, 2003) ............. 23

*Vara v. DeVos*,
    No. CV 19-12175-LTS, 2020 WL 3489679 (D. Mass. June 25, 2020) ............... 23

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ............................................................................ 23, 25

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
    396 F.3d 96 (2d Cir. 2005) ................................................................... 25

*Walsh v. Popular, Inc.,*
    839 F. Supp. 2d 476 (D.P.R. 2012) ................................................... 10, 11

*Welch v. Theodorides-Bustle,*
    273 F.R.D 692 (N.D. Fla. 2010) .......................................................... 24

*Wright v. S. New Hampshire Univ.,*
    565 F. Supp. 3d 193 (D.N.H. 2021) ..................................................... 13

**Statutes**

18 U.S.C. § 2710 ...................................................................................... 1
18 U.S.C. § 2710(c)(3) .............................................................................. 6
9 U.S.C. § 16(a) ....................................................................................... 4

**Rules**

Fed. R. Civ. P. 12(b) ............................................................................... 3
Fed. R. Civ. P. 23(a)(1) ........................................................................... 19
Fed. R. Civ. P. 23(a)(3) ........................................................................... 20
Fed. R. Civ. P. 23(a)(4) ........................................................................... 21
Fed. R. Civ. P. 23(b)(2) ................................................................. 2, 7, 9, 23
Fed. R. Civ. P. 23(b)(3) .............................................................. 4, 12, 14, 26
Fed. R. Civ. P. 23(c)(3) ........................................................................... 25
Fed. R. Civ. P. 23(e) ..................................................................... 10, 11, 18
Fed. R. Civ. P. 23(e)(2) ........................................................................... 10
Fed. R. Civ. P. 23(e)(2)(C) ................................................................. 14, 16
Fed. R. Civ. P. 23(e)(2)(C)(iii) ............................................................... 17
Fed. R. Civ. P. 23(e)(2)(D) ...................................................................... 17
Fed. R. Civ. P. 23(e)(3) ..................................................................... 15, 17
Fed. R. Civ. P. 23(g)(1)(A) ...................................................................... 24
Fed. R. Civ. P. 23(h) ............................................................................... 9
Fed. R. Civ. P. 54(d)(2) ........................................................................... 9

## I.     INTRODUCTION.

Plaintiff Anca Adams ("Plaintiff" or "Class Representative") moves unopposed for an order granting preliminary approval of the Class Action Settlement Agreement ("Settlement Agreement") she has reached with Defendants America's Test Kitchen, LP, America's Test Kitchen, Inc. and Jackie Ford ("ATK" or "Defendants") (collectively with Plaintiff, the "Parties").[1] Plaintiff brought this action (the "Action") alleging ATK violated her and other similarly situated individuals' rights under the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA"), by disclosing her personally identifiable information to Meta Platforms, Inc. ("Meta," f/k/a Facebook Inc.). More specifically, Plaintiff alleged ATK voluntarily installed the Meta tracking Pixel on its websites and configured the Pixel to disclose to Meta the Facebook ID and the video content the ATK subscriber was requesting or obtaining. Through this litigation and the Settlement Agreement, with the Court's approval, Plaintiff will have remedied these privacy-invasive practices.

ATK has agreed to the following injunctive relief. Within 45 days of the Preliminary Approval Order, (1) ATK will remove all Meta Pixels embedded in any webpage on Defendants' websites (including www.americastestkitchen.com) accessible in the United States that include video content, and (2) ATK will not possess "personally identifiable information" ("PII") (as that term is defined in the VPPA) of Settlement Class Members generated by Meta Pixels. In addition, ATK shall not resume operation of the Meta Pixel on any webpage of their websites accessible in

---

[1] ATK does not oppose this motion and has agreed to and executed the Settlement Agreement, including the injunctive and remedial measures therein.  Consistent with the Settlement Agreement, ATK does not admit liability and denies any statement in this motion suggesting otherwise.

the United States that includes video content.[2] Plaintiff may seek from the Court an injunction to enforce the terms of this Agreement.

Importantly, Plaintiff secured this injunctive relief without releasing any Settlement Class Member's claim for damages or other monetary relief.

This proposed settlement (and the proposed Settlement Class) is pursuant to Fed. R. Civ. P. 23(b)(2) which applies when class members seek declaratory or injunctive relief and do not seek individualized claims for damages. It requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Plaintiff agreed to settle this lawsuit pursuant to Rule 23(b)(2), without a damages' component because ATK has no insurance coverage applicable to the claims asserted in this Action and its finances are not sufficient to adequately fund a class-wide monetary settlement, much less a class-wide judgment. In spite of these obstacles, the Settlement Agreement fully redresses the alleged privacy violations at issue in this litigation expeditiously, ensures ATK cannot resume the challenged conduct without obtaining Court approval to do so, and leaves Settlement Class Members' damages claims unimpaired.

For these reasons, and as set forth more fully below, Plaintiff submits the Settlement is fair, reasonable, and adequate, and meets all requirements for preliminary approval. Therefore, Plaintiff respectfully requests that the Court (1) grant preliminary approval of the proposed Settlement Agreement attached to the Declaration of Hank Bates ("Bates Declaration") as **Exhibit 1**; (2) certify the Settlement Class under Federal Rule of Civil Procedure 23(b)(2) for settlement purposes

---

[2] Defendants may seek relief from this injunction upon material amendment or repeal of the VPPA or upon implementation of a VPPA-compliant consumer consent form.

only; (3) appoint Hank Bates, Lee Lowther, Tiffany Oldham, and Courtney Ross of Carney Bates & Pulliam, PLLC as Class Counsel; and (4) approve the proposed Notice Program,[3] set forth in the Settlement Agreement and attached to the Bates Declaration as **Exhibit 2**.

## II.    PROCEDURAL BACKGROUND

Prior to filing the instant Action, Plaintiff's counsel conducted a thorough investigation as to the factual and legal merits of the claims and possible defenses, the proper measure of damages, and the likelihood of class action certification. Bates Decl. at ¶ 4.

On July 18, 2022, Plaintiff filed a putative class action complaint against ATK in Massachusetts Superior Court for Suffolk County alleging violations of the VPPA. *Id.* at ¶ 5. ATK removed the case to this Court on August 18, 2022. Following removal, Defendants filed a motion to dismiss, along with a supporting memorandum of law and declarations. Doc Nos. 22-25. On October 21, 2023, Plaintiff filed an Amended Class Action Complaint (the "Amended Complaint"). Doc No. 26. The material allegations of the Amended Complaint center on ATK's alleged disclosure of its subscribers' PII, as defined under the VPPA, to Meta without consent via the Pixel, a business advertising and analytical tool offered by Meta, that ATK chose to embed on its websites. *Id.* at ¶ 6.

On November 10, 2022, Defendants filed a motion to compel arbitration, or, alternatively, to dismiss the Amended Complaint pursuant to Rule 12(b)(1) and (6). Doc No. 31; *see also* Doc Nos. 32-34 (supporting materials). Plaintiff opposed that motion (*see* Doc Nos. 36-37), and Defendants filed a reply (*see* Doc Nos. 38-39). *Id.*

---

[3] Capitalized terms that are otherwise undefined have the same meaning as in the Settlement Agreement.

On June 30, 2023, the Court denied Defendants' motion to compel arbitration, or, alternatively, to dismiss the Amended Complaint in its entirety. Doc No. 45. Thereafter, Defendants filed a Notice of Appeal, commencing an interlocutory appeal of this Court's order pursuant to 9 U.S.C. § 16(a). Doc No. 48. Around this same time, Defendants' Counsel presented Plaintiff's Counsel with information related to ATK's financial condition, which called into question ATK's ability to satisfy an adverse monetary judgment. Bates Decl. at ¶ 8.

On July 24, 2023, the First Circuit Court of Appeals issued a "Case Opening Notice." Bates Decl. at ¶ 9. Following commencement of the appeal, and pursuant to the First Circuit's Civil Appeals Management Program ("CAMP"), the Parties participated in a mediation session on August 24, 2023, overseen by the First Circuit's Settlement Counsel, the Honorable Patrick J. King. *Id*. at ¶ 10. While no agreement was reached on that date, the Parties agreed to continue settlement negotiations through the First Circuit's Settlement Counsel. *Id*. at ¶ 11. In light of the ongoing settlement discussions, ATK moved for and was granted an extension of time to file its opening brief. *Id*.

Following their initial mediation session, the Parties exchanged informal discovery regarding the merits of the case, class certification, Defendant's lack of insurance coverage, and Defendant's financial status and inability to fund a class action settlement under Fed. R. Civ. P. 23(b)(3). The Parties then participated in a second mediation session before Judge King on September 27, 2023. Again, the Parties were unable to reach a resolution at that time but agreed to continue settlement negotiations through the First Circuit's Settlement Counsel. Bates Decl. at ¶ 13.

On October 2, 2023, after continued settlement negotiations facilitated by Judge King, the Parties reached an agreement in principle to settle this Action. *Id*. at ¶ 14. As such, the Parties

jointly moved to stay the appeal, which the First Circuit granted on October 30, 2023. *Id.* at ¶ 15. Thus, the appeal is currently stayed, and neither party has submitted briefs in connection with the appeal. Bates Decl. at ¶ 16. After reaching the settlement agreement in principle, the Parties continued negotiating all material terms to Settlement Agreement now before the Court.

## III.     SUMMARY OF THE SETTLEMENT TERMS

The Settlement requires ATK to do the following: (1) undertake the remedial measures described below; (2) be bound by the injunctive relief described below; (3) pay all costs of the class notice and administration; (4) pay any Service Award to Plaintiff approved by the Court of no more than $2,500.00; and (5) pay any attorneys' fees awarded by the Court not to exceed $300,000.00 and any litigation costs award not to exceed $10,000.00. *See* Bates Decl., Ex. 1.

### A.   The Settlement Class Encompasses Everyone Injured by the Privacy Intrusions Plaintiff Alleges Within the Statute of Limitations Period.

The Settlement Agreement defines the B(2) "Settlement Class" as:

> all individuals residing in the United States who were Facebook account holders and subscribers to Defendants' digital services during the Class Period, and who requested or obtained any videos on any America's Test Kitchen website while an active Facebook account holder during the Class Period.

*See* Bates Decl., Ex. 1 at ¶ 1.23. "Excluded from the Settlement Class are (1) any judge presiding over this Action and members of their families; (2) Defendants, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors, or assigns of any such excluded persons." *Id.* at ¶

1.23. The "Class Period" is defined as "the period from July 18, 2020,[4] to and through the date of Preliminary Approval." *Id.* at ¶ 1.3.

### B.  The Settlement Provides for Significant Remedial Measures and Injunctive Relief.

Pursuant to the Settlement, ATK agreed that, within 45 days of the Preliminary Approval Order, (1) ATK will remove all Meta Pixels embedded in any webpage on Defendants' websites (including www.americastestkitchen.com) accessible in the United States that include video content, and (2) ATK will not possess "personally identifiable information" ("PII") (as that term is defined in the VPPA) of Settlement Class Members generated by Meta Pixels. *Id.* at ¶ 2.1. The Settlement further provides that ATK shall not resume operation of the Pixel on any webpage of its websites accessible in the United States that include video content. *Id.* Notwithstanding the above, ATK may seek relief from this injunction upon amendment or repeal of the VPPA or upon implementation of a VPPA-compliant consumer consent form. *Id.* at ¶ 2.2.

### C.  The Settlement Release Is Adequately Tailored in Scope and Does Not Release Settlement Class Members' Damages Claims.

In exchange for undertaking the above described relief, ATK will receive a release of "any claim, liability, right, demand, suit, matter, obligation, action, or causes of action, of every kind and description, that the Releasing Parties have or could have presented or asserted against Defendants regarding the alleged disclosure of the Settlement Class Members' personally identifiable information and video viewing behavior to any third party, including all claims that were brought or could have been brought in the Action relating to the alleged disclosure of the

---

[4] The VPPA has a two-year statute of limitations period. 18 U.S. Code § 2710(c)(3). Thus, the start of the Class Period, July 18, 2020, is two years prior to the filing of the complaint in this Action. *See* Doc No. 1.

Settlement Class Members' personally identifiable information and video viewing behavior to any third party. *Id.* at ¶ 1.18.

Importantly, however, because this settlement is pursuant to Rule 23(b)(2), the Released Claims expressly "*do not include claims for damages or other monetary relief*" and "do not include the right of any Settlement Class Member or any of the Released Parties to enforce the terms of the settlement contained in this Settlement Agreement." *Id.* (emphasis added).

### D.  The Settlement Administrator

After a competitive bid process, the Parties have selected Kroll Settlement Administration LLC ("Kroll") as the Settlement Administrator, subject to Court approval. Bates Decl. at ¶ 39. Kroll has ample experience in class action administration and will be responsible for effectuating the Notice Program (described below) consistent with the terms of the Settlement Agreement, as approved by the Court. *Id.*, Ex. 1 at ¶ 5.2; *see also* Declaration of Scott M. Fenwick of Kroll Settlement Administration LLC, attached as Ex. 2 to Bates Decl.

### E.  The Proposed Notice Program Is Calculated to Afford Ample Notice.

While class notice is not required for injunctive relief settlements under Rule 23(b)(2) (*see infra*), the Settlement Agreement outlines a robust Notice Program. Pursuant to the Notice Program, Kroll will send Email Notice to subscribers of America's Test Kitchen services (*see* Bates Decl., Ex. 1 at ¶ 4.3), and ATK will place a banner ad on ATK's website for a period of 30 days. *Id*. at ¶ 4.4.  The emails and banner ads will direct Settlement Class Members to a case-specific settlement website with the URL www.ATKSettlement.com (the "Settlement Website"), administered by Kroll. The Settlement Website shall include at least the following information: (i) stand-alone descriptions of the injunctive relief and remedial measures ; (ii) a summary of the Action and the settlement terms; (iii) a "Contact Us" page with Kroll's information; (iv) important case

7

documents, including the Long-Form Notice, the Settlement Agreement, and motions for approval and attorneys' fees; (v) important case dates and deadlines, including the objection deadline and the date of the Final Approval Hearing; and (vi) a summary of Settlement Class Member rights, including how to object to the Settlement. *Id.* at ¶ 4.2. In addition, Kroll will create a toll-free telephone helpline with an interactive voice response ("IVR") system to provide Settlement Class Members with responses to frequently asked questions and provide essential information regarding the litigation that is accessible 24 hours a day, 7 days a week (*see id*. at ¶ 4.5).

ATK shall have the sole responsibility to pay for and fund the Notice Program, including all fees and expenses of the Settlement Administrator. *Id.* at ¶ 4.7.

### F. Counsel Will Apply for a Class Representative Service Award.

Ms. Adams devoted significant energy and resources to the Action. Ms. Adams provided information to her counsel that informed the complaints and has regularly communicated with counsel about strategy and major case developments throughout the litigation. Bates Decl. at ¶ 53. Ms. Adams participated in the two mediation sessions before Judge King and showed willingness and engagement throughout the mediation process, receiving appropriate updates about the status of mediation and understanding why the settlement terms were appropriate under the circumstances of this case. *Id.* at ¶ 54.

In recognition of these efforts, Plaintiff will apply for a Service Award of $2,500 as compensation for serving as the Class Representative in the Action. *Id.*, Ex. 1 at ¶ 8.2.

### G. Plaintiff's Counsel Application for Attorneys' Fees and Reimbursement of Litigation Expenses.

The Settlement Agreement provides that Plaintiff's Counsel may file a motion with the Court for an award of attorneys' fees not to exceed $300,000.00, as well as reimbursement of their

litigation costs not to exceed $10,000.00, for an aggregate amount of $310,000. Bates Decl. at ¶ 26, Ex. 1 at ¶ 8.1. This sum is less than Plaintiff's Counsel's fees and costs in this matter; however, Defendants have shown their financial incapability to cover additional fees and expenses. *Id.* at ¶ 3.1. The Parties did not address the issue of attorneys' fees and expenses until after they had reached an agreement in principle with respect to the injunctive relief and other substantive terms of the Settlement. Bates Decl. at ¶ 27. The Settlement Agreement is in no way contingent upon the Court's award of attorneys' fees and costs. *Id.*, Ex. 1 at ¶ 8.3. Indeed, the Parties have agreed to accept as final, and not appeal, any award of attorneys' fees not to exceed $300,000.00 and any costs award not to exceed $10,000.00. *Id.* Plaintiff will file a formal motion for approval of fees and costs contemporaneously with her motion for final approval of the Settlement and before the end of the objection period. *See* Fed. R. Civ. P. 23(h); Fed. R. Civ. P. 54(d)(2).

## IV.   PROPOSED SCHEDULE OF EVENTS

Consistent with the provisions of the Settlement Agreement, the Parties respectfully propose the following schedule for the various Settlement events:

| Event | Date |
|---|---|
| Deadline for Settlement Website and IVR to go live | 45 calendar days following entry of Preliminary Approval |
| Deadline to commence the Notice Program ("Notice Date") | 45 calendar days following entry of Preliminary Approval |
| Deadline for Plaintiff's motion for final Approval and application for attorneys' fees, litigation costs, and service award | 75 calendar days following entry of Preliminary Approval (30 days following the Notice Date) |
| Deadline for objections to be postmarked[5] | 90 calendar days following entry of Preliminary Approval (45 days following the Notice Date) |
| Deadline for Parties to file any responses to any objections | 14 calendar days prior to Final Approval Hearing |

---

[5] There is no ability to opt out of a Rule 23(b)(2) settlement.

| Final Approval hearing | At the Court's convenience, but at least 118 calendar days after entry of Preliminary Approval |
| --- | --- |

## V.     LEGAL STANDARD

Preliminary approval is appropriate where the Court "will likely be able to" approve the settlement under Rule 23(e)(2). Fed. R. Civ. P. 23(e); *see also id*. 2018 Amendment Advisory Committee Notes. Specifically, Rule 23(e) requires courts to ensure that a class settlement is "fair, reasonable, and adequate" in light of the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Along with the Rule 23(e)(2) factors, courts in the First Circuit also consider a modified version of the factors identified by the Second Circuit in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir.1974). *See Walsh v. Popular, Inc.*, 839 F. Supp. 2d 476, 480 (D.P.R. 2012); *In re Lupron(R) Mktg. & Sales Practices Litig*., 228 F.R.D. 75, 93 (D. Mass. 2005); *see, e.g., Cohen v. Brown University*, 16 F.4th 935, 943 n.5 (1st Cir. 2021) ("[T]he Advisory Committee noted that the amendment was not intended to 'displace any factor' previously in use."). The modified *Grinnell* factors considered in the First Circuit include:

> (1) risk, complexity, expense and duration of the case; (2) comparison of the proposed settlement with the likely result of continued litigation; (3) reaction of the class to the settlement; (4) stage of the litigation and the amount of discovery completed; and (5) quality of counsel and conduct during litigation and settlement negotiations.

10

*Walsh*, 839 F. Supp. 2d at 480; *Lupron(R) Mktg.*, 228 F.R.D. at 93. As outlined below, preliminary approval of the Settlement is warranted.

## VI.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.

### A.  The Settlement Is Fundamentally Fair, Reasonable, and Adequate.

As a matter of public policy, settlement is a strongly favored mechanism for resolving disputed claims, especially in class action cases. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 (1st Cir. 2009); *Lazar v. Pierce*, 757 F.2d 435, 440 (1st Cir. 1985) (Torruella, J., concurring) (noting the "overriding public interest in favor of the voluntary settlement of disputes, particularly where class actions are involved").

Here, the proposed Settlement, negotiated by competent and experienced counsel who vigorously represented the interests of the Settlement Class, satisfies Rule 23(e), and, therefore, should be preliminarily approved.

### 1.    The Settlement Class Has Been Vigorously Represented.

Plaintiff's interests are aligned with the interests of Settlement Class Members: each suffered the same alleged injury (the improper disclosure of PII to Meta without consent via the Pixel), and each has the same interest in securing remedial and injunctive relief resulting in the cessation of the collection and possession of his or her PII. Moreover, the remedial and injunctive relief applies uniformly to benefit all members of the Settlement Class. Thus, there is no conflict between Plaintiff and the members of the Settlement Class. Additionally, Plaintiff has cooperated fully with her counsel in representing the proposed Class, staying informed about the case, keeping in contact with counsel, and submitting information necessary for informal discovery efforts. *See* Bates Decl. at ¶ 18.

Plaintiff's Counsel likewise have adequately represented the Settlement Class. They are highly qualified and experienced class action litigators. They have prosecuted similar consumer class actions involving privacy violations, and, in particular, VPPA claims. *See* Bates Decl. at ¶ 23 and Ex. 3 (CBP firm resume). Moreover, Plaintiff's counsel dedicated significant time and personnel to vigorously litigating the case to date, including performing such tasks as: (i) conducting a thorough pre-suit investigation that resulted in the preparation of a detailed complaint; (ii) defeating ATK's motion to compel arbitration or, alternatively, to dismiss, (iii) drafting an amended complaint; (iv) gathering Plaintiff's documents and relevant information; (v) preparing for mediation through numerous discussions with opposing counsel; (vi) requesting and reviewing relevant informal discovery regarding the merits of the case, class certification, and Defendants' ability to fund a class action settlement under Rule 23(b)(3) during the mediation process, (vii) participating in two mediation sessions, and (viii) negotiating the Settlement and formalizing its terms in a set of comprehensive settlement documents. *See* Bates Decl. at ¶ 20.

Notably, the Parties agreed to mediate based, in part, on Defendants' disclosure that it would not be able to pay a damages judgment under Rule 23(b)(3). During mediation and the settlement negotiations that followed, Defendant responded to a number of questions posed by Plaintiff's Counsel and provided documentation regarding insurance coverage, their financial condition and ability or lack thereof to fund a class action settlement under Federal Rule of Civil Procedure 23(b)(3). *Id.* at ¶ 12, 22-23.

In sum, Plaintiff's interests are aligned with the interests of Settlement Class Members. Plaintiff's Counsel had the ability to, and did, thoroughly and effectively represent the interests of the Settlement Class throughout the adversarial litigation and the mediation process, securing favorable Settlement benefits in spite of ATK's present financial condition. Accordingly, this

factor weighs in favor of preliminary approval.  *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d at 36 n.12 ("The duty of adequate representation requires counsel to represent the class competently and vigorously and without conflicts of interest with the class.").

> **2.      The Settlement Was Negotiated at Arm's-Length After the Exchange of Informal Discovery.**

A settlement is procedurally fair and reasonable when "it is achieved by arm's length negotiations conducted by experienced counsel." *Nat'l Ass'n of Deaf v. Mass. Inst. of Tech.*, No. 15-cv-30024, 2020 WL 1495903, at *4 (D. Mass. Mar. 27, 2020) (citation omitted). The assistance of an experienced, neutral mediator and pre-negotiation exchange of discovery further contributes to a settlement's procedural fairness and reasonableness.  *See, e.g.*, *Meaden v. HarborOne Bank*, No. 23-cv-10467, 2023 WL 3529762, at *4 (D. Mass. May 18, 2023) (indicia of reasonableness included mediation with a neutral and exchange of transaction data and damages methodologies); *Roberts v. TJX Cos., Inc.*, No. 13-cv-13142, 2016 WL 8677312, at *6 (D. Mass. Sept. 30, 2016) ("[T]he participation of an experienced mediator[] also supports the Court's finding that the Settlement is fair, reasonable, and adequate."); *Wright v. S. New Hampshire Univ.*, 565 F. Supp. 3d 193, 206 (D.N.H. 2021) ("presumption of reasonableness" applied where "counsel for the parties negotiated the Agreement at arm's length, at times with the assistance of an experienced and neutral mediator, following a thorough investigation and mutual exchange of evidence.").

Here, the Parties engaged in mediation pursuant to the First Circuit's mediation and settlement program, CAMP. The Parties' mediation sessions were facilitated by the First Circuit's Settlement Counsel, the Honorable Patrick King, an experienced mediator. During mediation and the Parties' subsequent settlement negotiations, Plaintiff's Counsel obtained information and documentation from Defendants' Counsel related to the merits of the case, class certification,

Defendants' lack of insurance coverage, and Defendants' ability to fund a class action settlement under Fed. R. Civ. P. 23(b)(3). Bates Dec. at ¶ 22-24.  Moreover, it was only after two mediation sessions before Judge King and weeks of ongoing settlement negotiations that the parties were able to reach an agreement in principle. *Id.* at ¶ 24.  These efforts were unquestionably at arms-length and non-collusive.

Further, although formal discovery did not take place, the parties engaged in robust informal discovery during the mediation process and settlement negotiations, which included direct communications between the Parties' respective counsel and ATK personnel regarding ATK's data, the size of the class, ATK's lack of applicable insurance coverage, ATK's finances and ATK's ability to satisfy an adverse judgment. *See supra*; *see also* Bates Decl. at ¶ 22-24; Ex.1 at ¶ 3.1. Plaintiff's counsel—attorneys with considerable experience in assessing the strengths and weaknesses of VPPA cases—came away from the mediation well-informed about the strengths and risks of the claims, as well as their value, and the value of the Settlement now before this Court. *Id.* In sum, "the parties exchanged sufficient information over the course of the mediation process to ensure that both sides were making an informed decision regarding the adequacy of the settlement." *Roberts*, 2016 WL 8677312, at *6 (informal information exchange supported settlement's reasonableness).

### 3. The Settlement Provides Meaningful Relief to the Class.

Next, the Court must assess the Settlement's substantive fairness. Rule 23(e)(2)(C) enumerates four factors to be considered when assessing whether the relief provided to the Settlement Class is adequate: (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims," (iii) "the terms of any proposed award of attorney's fees,

14

including timing of payment," and (iv) "any agreement required to be identified under Rule 23(e)(3)."

### a. The Costs, Risks, and Delay of Trial and Appeal.

As summarized above, the Settlement fully remedies the alleged VPPA violations as, within 45 days of *preliminary* approval, ATK must remove all Meta Pixels embedded in any webpage on Defendants' websites accessible in the United States that include video content and ATK delete, or otherwise no longer possess, any "personally identifiable information" as defined by the VPPPA.

Although Plaintiff is confident in the strength of her claims, she nevertheless recognizes that this litigation is inherently risky. Claims applying the VPPA to operation of the Pixel are still relatively untested. ATK has asserted many defenses in this Action, including filing a motion to compel arbitration and to dismiss.  ATK's appeal of this Court's denial of its motion to compel arbitration is currently pending.  Although Plaintiff and her counsel are confident the appeal will be denied, she also recognizes there is a risk of reversal.

Further, Plaintiff's Counsel is aware of no Pixel-based VPPA case that has proceeded to summary judgment, let alone trial. Moreover, absent the instant Settlement, Plaintiff would have to conduct formal discovery, which would involve the lengthy, costly, and uncertain process of obtaining relevant information from ATK and pursuing subpoenas against third parties like Meta. In addition to surviving summary judgment, Plaintiff would need to certify and maintain a class over ATK's opposition. Plaintiff then would need to prevail at trial and secure an affirmance on appeal before recovering damages or securing injunctive relief. Ultimately, continued litigation could add several more years before there is a resolution. Though Plaintiff believes in the merits of her case, settlement here avoids this significant uncertainty while ending the challenged conduct

15

expeditiously, without sacrificing any Settlement Class Member's right to pursue damages. These factors sharply weigh in favor of preliminary approval.

Finally, ATK's lack of insurance and financial condition weigh heavy on the future prospects of continued litigation. Under the seventh *Grinnell* factor, a court also considers "the ability of the defendants to withstand a greater judgment." *Grinnell*, <u>495 F.2d at 463</u>. From the beginning, Plaintiff's complaint primarily sought declaratory and injunctive relief, because it was critically important that ATK cease its alleged improper use of the Pixel to invade Plaintiff's and Class members' privacy rights. After informal discovery and disclosure of ATK's financial situation and lack of insurance coverage applicable to these VPPA claims, it became clear ATK would not be able to withstand a large monetary judgement consistent with the claimed damages. *See* Bates Dec. at ¶ 22-24 and Ex. 1 ¶ 3.1. Based on informal discovery, Plaintiff's Counsel has assessed that there are approximately 862,000 unique ATK subscribers during the class period and that, given that roughly 70% of adult American are Facebook users, the proposed Settlement Class consists of approximately 600,000 individuals. Bates Dec. at ¶ 21.  With statutory damages of $2,500, any judgment would be well over a billion dollars. Moreover, ATK's representations about its finances—made in good faith and supported by documentary evidence—support the conclusion that it does not have the ability to fund a fair and reasonable damages settlement for a Class comprised of approximately 600,000 individuals. *See* Bates Dec. at ¶ 22-24, 34-35 and Ex. 1 ¶ 3.1. Thus, this *Grinnell* factor strongly favors preliminary approval.

### b. Effectiveness of Any Proposed Method of Distributing Relief and Any Agreement Required to Be Identified.

Rule 23(e)(2)(C)(ii) requires that the "proposed method of distributing relief to the class" be "effective," while Rule 23(e)(2)(C)(iv) requires identification of any agreement under Rule

23(e)(3). Under the Settlement Agreement, ATK is required to implement the remedial and injunctive relief within 45 of the Preliminary Approval Order. Thus, Settlement Class members will receive these benefits automatically – even before final approval – without the need to take any affirmative action like submitting a claim form. Further, there are no additional agreements outside of the Settlement Agreement that require identification under Rule 23(e)(3).

### c. The Terms of any Proposed Award of Attorney's Fees.

The Court also considers the "terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Under the Settlement, if Plaintiff's counsel are appointed Class Counsel, they will apply for a fees award not to exceed $300,000.00 and a costs award not to exceed $10,000.00 to cover their attorneys' fees and reasonable litigation expenses. Ex. 1 at ¶ 8.1. This sum is less than Plaintiff's counsels' fees and costs in this matter, without any multiplier. Bates Decl. at ¶ 26. The Parties addressed the issue of attorneys' fees and expenses, with the assistance of Judge King, only after they had reached an agreement in principle with respect to the substantive terms of the Settlement, including the proposed injunctive relief. *Id*. at ¶ 27. The Settlement Agreement is in no way contingent upon the Court's award of attorneys' fees and costs. *Id*. at 28, Ex. 1 at ¶ 8.3. Indeed, the Parties have agreed to accept as final, and not appeal, any award of attorneys' fees not to exceed $300,000.00 and any cost award not to exceed $10,000.00. Ex. 1 at ¶ 8.1. Plaintiff's counsel will not receive any funds until the Court has granted its fee request.

### 4. The Settlement Treats Settlement Class Members Equitably.

Finally, the proposed Settlement treats members of the Settlement Class equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, there is no preferential treatment for any members of the Settlement Class as the remedial and injunctive relief applies uniformly to benefit

17

all members of the Settlement Class.

Further, Plaintiff's counsel have extensive experience litigating and settling complex consumer class actions throughout the country, including those concerning data privacy.  *See* Bates Decl. at ¶ 47 and Exs. 3 & 4.  Based on their experience, Plaintiff's Counsel conclude that the Settlement provides exceptional injunctive relief for the Class while avoiding the costs, delays, and uncertainties of continued litigation. *See id.* at ¶¶ 32-37.  Counsel's opinion is entitled to "significant weight" and further supports a preliminary presumption of fairness.  *See Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *Bussie*, 50 F. Supp. 2d at 77 (similar).

## VII.   THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS.

At the preliminary approval stage, the court must determine whether it "will likely be able to" certify the class for purposes of judgment on the proposed settlement, and finally approve the proposed settlement as "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e). The court's role is to assess whether "the settlement appears to fall within the range of possible final approval." *Del Sesto v. Prospect Chartercare, LLC*, No. 18-cv-00328, 2019 WL 2162083, at *1 (D.R.I. May 17, 2019) (citations and quotations omitted). Then, after the class is given notice and an opportunity to object to the proposed settlement, the court holds a hearing to consider whether to grant final approval of the settlement and certify the Settlement Class. *See* Fed. R. Civ. P. 23(e) (2), (4), (5). "[T]he ultimate decision by the [district court] involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other

18

possible but perhaps unattainable variations on the proffered settlement." *Cohen v. Brown Univ.*, 16 F.4th 935, 944 (1st Cir. 2021) (quotations omitted).

Class certification is a two-step process: *first*, Plaintiff must establish numerosity, commonality, typicality, and adequacy under Rule 23(a); *second*, Plaintiff must establish that one of the bases for certification in Rule 23(b) is met. Plaintiff contends, and ATK does not dispute for settlement purposes only, that the proposed Settlement Class meets the requirements for class certification under Rules 23(a) and (b)(2).

## A. The Class Is Sufficiently Numerous.

The numerosity requirement is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The threshold for establishing numerosity is low, and '[c]lasses of 40 or more have been found to be sufficiently numerous.'" *Meaden*, 2023 WL 3529762, at *2 (quoting *DeRosa v. Mass. Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 98 (D. Mass. 2010)). Here, the Settlement Class is defined as "all individuals residing in the United States who were Facebook account holders and subscribers to Defendant's digital services during the Class Period, and who requested or obtained any videos on any ATK website while an active Facebook account holder during the Class Period." Bates Decl., Ex. 1 at ¶ 1.23. As noted above, based on the exchange of information conducted in this Action, the Parties have assessed that the Settlement Class consists of approximately 600,000 individuals, making joinder of all members of the class impractical. Bates Decl. at ¶ 21. Thus, Rule 23(a)(1) is satisfied.

## B. Several Questions of Law and Fact Are Common to the Class.

Rule 23(a)(2) requires that there be one or more "questions of law or fact common to the class." "The threshold for commonality under Rule 23(a)(2) is not high." *In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45, 54 (D. Mass. 2010). There must be at least one

common issue of fact or law that shapes the class such that the resolution "affect[s] all or a substantial number of the class members." *Id.*

Here, Plaintiff readily meets this standard, as many significant common questions of law and fact exist, *e.g.*, (1) whether ATK knowingly disclosed Plaintiff's and Settlement Class Members' PII to Meta; (2) whether ATK's conduct violates the VPPA; and (3) whether ATK should be enjoined from disclosing Plaintiff's and Settlement Class Members' personally identifiable information. *See* Amend. Compl. at ¶ 49, Doc No. 26. All Settlement Class Members' claims will be resolved by answering these common questions. Indeed, the overarching focus for all these inquires is ATK's common course of conduct, i.e., ATK's knowing disclosure of Class Members' PII through its use of the Facebook Pixel. *See, e.g., Kinder v. Meredith Corp.*, No. 14-cv-11284, 2016 WL 454441, at *1 (E.D. Mich. Feb. 5, 2016) ("[B]ecause there are common questions of both law and fact, including the course of [Defendants'] conduct with customer purchasing information and the applicability of [the Michigan Video Rental Privacy Act] to that conduct, the commonality requirement is satisfied."). Thus, commonality is satisfied.

### C. The Class Representative's Claim Is Typical of the Settlement Class Members.

The typicality requirement is satisfied when the representative party's claims are "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "[T]he plaintiff needs only to demonstrate that his or her 'injuries arise from the same events or course of conduct as do the injuries of the class and that the 'plaintiff's claims and those of the class are based on the same legal theory.'" *Meaden*, 2023 WL 3529762, at *2 (citing *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008)). Typicality does not require the claims of the representative plaintiff to be completely identical to those of the class. *Ouadani v. Dynamex Operations E., LLC*, 405 F. Supp. 3d 149, 162 (D. Mass. 2019).

Here, Plaintiff's claims stem from the same course of conduct and pattern of alleged wrongdoing as the claims of Settlement Class Members. When a Class Member requested or obtained specific video materials from ATK's website, the Pixel transmitted that Class Member's PII to Meta. While Class Members may not have requested or obtained the same video materials from ATK, the transmission of the PII occurred in precisely the same way. Amend. Compl. at ¶¶ 20–39, 50. Accordingly, Plaintiff's claims are typical because she was subject to the same conduct as the other Class Members, and she is alleged to have suffered the same injury as a result. *Meaden*, 2023 WL 3529762, at *2.

### D. The Proposed Class Representative and Class Counsel Have and Will Continue to Fairly and Adequately Represent the Settlement Class.

The adequate representation requirement is satisfied when the representative party is able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires first "that the class representative's interests do not conflict with any potential class member, and [second] that the class counsel can adequately represent the interests of the class." *Meaden*, 2023 WL 3529762, at *3 (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)); accord *Bertella v. JetDirect Aviation, Inc.*, No. 09-cv-10527, 2010 WL 4103664, at *3 (D. Mass. Oct. 19, 2010).

The interests of Plaintiff and Plaintiff's Counsel are not antagonistic to the Settlement Class. Plaintiff and the Settlement Class Members all (1) had subscriptions to Defendants' digital services, (2) requested or obtained video content on a website operated by ATK, and (3) used Facebook during the time Meta's Pixel was active on ATK's website. Therefore, Plaintiff and the Settlement Class Members all have the same interest in obtaining remedial and injunctive relief and have no other cognizable, conflicting interests. Thus, Plaintiff will fairly and adequately

21

protect Settlement Class Members' interests. *See Bezdek v. Vibram USA Inc*., <u>79 F. Supp. 3d 324,</u>
<u>339</u> (D. Mass.) (adequacy requirement met where plaintiff's "interests align with those of the class
as a whole, because all seek redress from the same injury"), *aff'd*, <u>809 F.3d 78</u> (1st Ci<u>r. 2015</u>);
*Bussie v. Allmerica Fin. Corp*., <u>50 F. Supp. 2d 59, 71</u> (D. Mass. 1999) (class representative
adequate where, "[l]ike the [c]lass overall, [the plaintiff] fell victim to [the Defendants'] alleged
scheme and, as such, the representatives and the [c]lass share the same interest in seeking
remediation for their injury"). Moreover, throughout the pendency of this Action, Plaintiff has
adequately and vigorously represented her fellow Class Members. She has spent significant time
assisting her counsel, including by providing pertinent information regarding her ATK
subscription and Facebook account. Bates Decl. at ¶ 31. These same facts support Plaintiff's
appointment as Class Representative for the Settlement Class.

Second, Class Counsel have extensive experience litigating, trying, and settling class
actions, including consumer privacy cases like this one, throughout the country. Bates Decl. at ¶¶
47-50. Courts across the country have recognized Class Counsel's experience in complex class
litigation and their skilled and effective representation. *Id*. Class Counsel had sufficient
information at their disposal before agreeing to this settlement, which allowed Class Counsel to
adequately assess the strengths and weaknesses of Plaintiff's case and balance the benefits of
settlement against the risks of litigation. *Id*. at ¶¶ 23. In sum, Class Counsel "is qualified,
experienced and able to vigorously conduct the proposed litigation." *Bertella*, <u>2010 WL 4103664</u>,
at *3 (quoting *In re Organogenesis Sec. Litig*., <u>241 F.R.D. 397, 406</u> (D. Mass. 2007)).

### E.  The Class Satisfies Rule 23(b)(2).

Class certification is appropriate where the defendant "has acted or refused to act on
grounds generally applicable to the class," thereby making injunctive or declaratory relief

appropriate on a classwide basis. Fed. R. Civ. P. 23(b)(2). The defining characteristic of a Rule 23(b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted— the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360.

Here, ATK has engaged in the exact same conduct as to every class member— allegedly disclosing their PII to Meta without their consent in violation of the VPPA. *New England Biolabs, Inc. v. Miller*, No. 1:20-CV-11234-RGS, 2022 WL 20583575, at *2 (D. Mass. Oct. 26, 2022) (certifying class under Rule 23(b)(2)). Further, the remedial measures and injunctive relief in this case "would provide relief to each member of the class." *Briggs, et. al., v. Mass. Dept. of Correction et. al.*, No. CV 15-40162-GAO, 2021 WL 3711406, at *1 (D. Mass. Aug. 20, 2021); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011); *Donovan v. Philip Morris USA, Inc.*, No. CIV.A. 06-12234-DJC, 2012 WL 957633, at *6 (D. Mass. Mar. 21, 2012); *Quadrelli v. Moniz*, No. 20-CV-10685-ADB, 2020 WL 3051778, at *7 (D. Mass. June 8, 2020) (certifying a Rule 23(b)(2) class where "a single remedy could provide relief to all class members"); *Vara v. DeVos*, No. CV 19-12175-LTS, 2020 WL 3489679, at *21 (D. Mass. June 25, 2020) (same). As in other cases concerning violations of individuals' statutory privacy rights, the Court should conclude that certification is appropriate pursuant to Rule 23(b)(2). *See Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 214 CM, 2012 WL 2505644, at *12 (S.D.N.Y. June 27, 2012) (approving injunctive relief settlement that preserved class members' monetary claims); *Selby v. Principal Mut. Life Ins. Co.*, No. 98 CIV. 5283(RLC), 2003 WL 22772330, at *3 (S.D.N.Y. Nov. 21, 2003) (approving settlement of injunctive relief class); *see, e.g., Diaz v. Google LLC*, No. 5:21-cv-3080, Doc No. 78 (N.D. Cal. Oct. 31, 2022) (certifying for settlement purposes Rule 23(b)(2) class in case alleging privacy violations by defendant's COVID contact tracing application); *Gaston v. LexisNexis Risk*

23

*Solutions, Inc.*, 483 F. Supp. 3d 318, 342–43 (W.D.N.C. 2020) (certifying Rule 23(b)(2) class based on defendant's disclosure of private information about class members to a third-party in violation of a federal statute); *Welch v. Theodorides-Bustle*, 273 F.R.D 692 (N.D. Fla. 2010) (same).

### 5.    Plaintiff's Counsel Should be Appointed Class Counsel.

In appointing class counsel, the Court considers proposed counsel's (1) work in identifying or investigating the claims, (2) experience in handling class actions and the types of claims asserted in the actions, (3) knowledge of the applicable law, and (4) resources they will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv). Plaintiff's Counsel satisfies all four factors.

First, Plaintiff's Counsel have invested substantial time and resources into the prosecution of the Action, including (1) investigating the claims and filing the complaint and amended complaint; (2) defeating Defendant's motion to compel arbitration, or, alternatively, to dismiss; (3) conducting informal discovery; (4) attending two mediation sessions; and (5) engaging in months of settlement negotiations. Bates Decl. at ¶ 20. In addition to the time, effort, and expense already expended, Plaintiff's Counsel will also spend the requisite time and expense necessary to fully implement the Parties' Settlement and the Notice Program, to address class member inquiries, and to present the Settlement to the Court for preliminary and final approval.

Second, Plaintiff's Counsel have extensive experience and knowledge in prosecuting other similar consumer class actions involving privacy violations. *Id.* at ¶ 47 and Ex. 3. As highlighted above in Section II(D) and detailed in the Bates Declaration, Plaintiff's Counsel have particularized knowledge of class litigation, including cases involving data privacy. Their skill and substantial experience in handling complex class actions have added much to this case. *Id.*

24

These efforts secured a substantial Settlement Agreement comprised of immediate remedial measures and injunctive relief. The Court should therefore appoint Hank Bates, Lee Lowther, Tiffany Oldham, and Courtney Ross of Carney Bates & Pulliam, PLLC as Class Counsel.

### 6.    The Notice Program Is Adequate.

The Settlement seeks injunctive relief, and Plaintiff seeks certification of Settlement Class pursuant to Rule 23(b)(2). Accordingly, notice is discretionary, not mandatory. Fed. R. Civ. P. 23(c)(3) ("For any class certified under Rule 23(b)(1) or (b)(2), the court *may* direct appropriate notice to the class. (emphasis added)); *Dukes*, 564 U.S. at 362 ("The Rule provides no opportunity for . . . (b)(2) class members to opt out and does not even oblige the District Court to afford them notice of the action."). The key is that the notice be reasonable. *Wal-Mart Stores*, 396 F.3d at 113.

Here the notice is eminently reasonable. Pursuant to the Notice Program, Kroll will disseminate an Email Notice to subscribers of America's Test Kitchen services (*see id.* at ¶ 4.3), and ATK will place a banner ad on ATK's website for a period of 30 days, which will include information regarding the Settlement. *Id.* at ¶ 4.4. The emails and banner ads will direct Settlement Class Members to a case-specific settlement website with the URL www.ATKSettlement.com (the "Settlement Website"). The Settlement Website shall include at least the following information: (i) stand-alone descriptions of the injunctive relief; (ii) a summary of the Action and the settlement terms; (iii) a "Contact Us" page with Kroll's information; (iv) important case documents, including the Long-Form Notice, the Settlement Agreement, and motions for approval and attorneys' fees; (v) important case dates and deadlines, including the objection deadline and the date of the Final Approval Hearing; and (vi) a summary of Settlement Class Member rights, including how to object to the Settlement. Settlement Agreement at ¶ 4.2. In addition, Kroll will create a toll-free telephone helpline with an interactive voice response ("IVR") system to provide Settlement Class Members

with responses to frequently asked questions and provide essential information regarding the litigation that is accessible 24 hours a day, 7 days a week (*see id*. at ¶ 4.5).

The Court should conclude that the Notice Program is satisfactory in this Rule 23(b)(2) settlement.

## VIII.   CONCLUSION

For these reasons, Plaintiff respectfully requests the Court enter an order: (1) preliminarily certifying the Settlement Class, (2) preliminarily approving the Settlement, including all exhibits, (3) appointing Plaintiff Anca Adams as Class Representative, (4) appointing Hank Bates, Lee Lowther, Tiffany Oldham, and Courtney Ross of Carney Bates & Pulliam PLLC as Class Counsel, (5) appointing Kroll as Class Administrator, (6) approving the form and manner of Notice, and (7) approving the proposed schedule of events, and (8) scheduling a Final Approval Hearing.

Dated: December 7, 2023                     Respectfully submitted,

                                            */s/ Hank Bates*
                                            Hank Bates (*pro hac vice*)
                                            Lee Lowther (*pro hac vice*)
                                            Courtney E. Ross (*pro hac vice*)
                                            CARNEY BATES & PULLIAM, PLLC
                                            519 W. 7th Street
                                            Little Rock, AR 72201
                                            Telephone: (501) 312-8500
                                            Facsimile: (501) 312-8505
                                            Email: hbates@cbplaw.com
                                            Email: llowther@cbplaw.com
                                            Email: cross@cbplaw.com

                                            Elizabeth Ryan (BBO No. 549632)
                                            BAILEY & GLASSER LLP
                                            176 Federal Street, 5th Floor
                                            Boston, MA 02110
                                            Tel: (617) 439-6730
                                            Fax: (617) 951-3954

Email: eryan@baileyglasser.com

*Attorneys for Plaintiff Anca Adams and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of December 2023, a true and correct copy of the foregoing was served in accordance with the Federal Rules of Civil Procedure via CM/ECF on all counsel of record.

*/s/ Hank Bates*
Hank Bates

27