**IN THE UNITED STATES DISTRICT COURT**
**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ANCA ADAMS, *individually and on* | ) | |
| *behalf of all others similarly situated,* | ) | C.A. No. 1:22-CV-11309 (AK) |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICA'S TEST KITCHEN, | ) | |
| LP, AMERICA'S TEST KITCHEN, INC., | ) | |
| JACKIE FORD | ) | |
| | ) | |
| *Defendants.* | ) | |

**PLAINTIFF'S AND CLASS COUNSEL'S MEMORANDUM IN SUPPORT**
**OF MOTION FOR AWARD OF ATTORNEYS' FEES, LITIGATION COSTS,**
**AND SERVICE AWARD**

**TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................................. 1

II.    RELEVANT BACKGROUND ............................................................................. 2

       A.     Overview of the Litigation. ...................................................................... 2

       B.     Preliminary Approval of the Settlement ................................................... 4

III.   SUMMARY OF THE SETTLEMENT ................................................................. 5

       The Settlement Class ............................................................................................. 5

       **A.**     The Settlement Class Encompasses Everyone Injured by the Privacy
                Intrusions Plaintiff Alleges Within the Statute of Limitations Period. ................. 6

       **B.**     The Settlement Provides for Significant Remedial Measures and
                Injunctive Relief. ....................................................................................... 6

       **C.**     The Settlement Release Is Adequately Tailored in Scope and Does Not
                Release Settlement Class Members' Damages Claims. ......................................... 7

       **D.**     Plaintiff's Request for (i) Attorneys' Fees and Litigation Costs and (ii) a
                Service Award. ........................................................................................... 7

IV.    THE REQUESTED AWARD OF ATTORNEYS' FEES IS REASONABLE
       AND APPROPRIATE. ......................................................................................... 8

       A.     The *Goldberger* Factors Support Class Counsel's Requested Fee Award. ......... 10

              1.     The Results Achieved Through Settlement and the Number of
                     Class Members Who Will Benefit from the Settlement Support the
                     Requested Fee. .................................................................................... 10

              2.     The Skill and Experience of Counsel Support the Requested Fee. ........... 11

              3.     The Amount of Time Devoted to the Litigation by Class Counsel
                     Supports the Requested Fee. ................................................................. 12

              4.     The Complexity and Duration of the Litigation Support the
                     Requested Fee. .................................................................................... 14

              5.     The Risks of the Litigation Support the Requested Fee. ........................ 15

              6.     Awards in Similar Cases Support the Requested Fee. ............................ 16

              7.     Public Policy Considerations Support the Requested Fee. ...................... 17

              8.     The Reaction of the Class Supports the Requested Fee. ......................... 17

       B.     The Requested Fee Is Appropriate Under the VPPA. ............................................ 17

V.     CLASS COUNSEL'S LITIGATION EXPENSES ARE JUSTIFIED AND
       SHOULD BE REIMBURSED. ........................................................................... 18

VI.    THE REQUESTED SERVICE AWARD IS REASONABLE. ........................... 19

VII.   CONCLUSION .................................................................................................. 20

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bacchi v. Massachusetts Mut. Life Ins. Co.*,
  2017 WL 5177610 (D. Mass. Nov. 8, 2017) ............................................................. 16

*Berry v. Schulman*,
  807 F.3d 600 (4th Cir. 2015) ................................................................................... 16

*Bettencourt v. Jeanne D'Arc Credit Union*, No. 17-CV-12548-NMG,
  2020 WL 3316223 (D. Mass. June 17, 2020) .......................................................... 16

*Bezdek v. Vibram USA Inc.*,
  79 F. Supp. 3d 324 (D. Mass.), *aff'd,* 809 F.3d 78 (1st Cir. 2015) ......................... 10, 11, 17, 18

*Blum v. Stenson*,
  465 U.S. 886 (1984) ................................................................................................. 13

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ................................................................................................... 8

*Carlson v. Target Enter., Inc.*,
  447 F. Supp. 3d 1 (D. Mass. 2020) .......................................................................... 20

*Commissioners of Pub. Works of City of Charleston v. Costco Wholesale Corp.*,
  No. 2:21-CV-42-RMG, 2024 WL 1004697 (D.S.C. Mar. 8, 2024) ......................... 16

*Ford v. Takeda Pharms. U.S.A., Inc.*, No. 1:21-CV-10090-WGY,
  2023 WL 3679031 (D. Mass. Mar. 31, 2023) .......................................................... 13

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ........................................................................................ 9

*Gordan v. Mass. Mutual Life Ins. Co.*, No. 13-cv-30184-MAP,
  2016 WL 11272044 (D. Mass. Nov. 3, 2016) ..................................................... 10, 11

*Hensley v. Eckerhart*,
  461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ............................................... 9

*Hill v. State St. Corp.*, No. CIV.A. 09-12146-GAO,
  2015 WL 127728 (D. Mass. Jan. 8, 2015) ...................................................... 12, 15, 18

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
  370 F. Supp. 2d 320 (D. Me. 2005) .......................................................................... 19

*In re GMC Pick–Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ........................................................................... 9

*In re Neurontin Mktg. & Sales Practices Litig.*,
  58 F. Supp. 3d 167 (D. Mass. 2014).............................................................. 9

*In re Puerto Rican Cabotage Antitrust Litig.*,
  815 F. Supp. 2d 448 (D.P.R. 2011) ............................................................... 17

*In re Sony SXRD Rear Projection TV Class Action Litig.*,
  2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008) ............................... 9

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ........................................................... 11

*Jermyn* v. *Best Buy Stores, L.P.*,
  2012 WL 2505644 (S.D.N.Y. June 27, 2012) ............................................... 8

*Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-cv-10219-JGD,
  2017 WL 6460244 (D. Mass. June 8, 2017).................................................. 19

*Lionbridge Techs., LLC v. Valley Forge Ins. Co.*, No. CV 20-10014-PBS,
  2021 WL 8999590 (D. Mass. May 18, 2021), *aff'd*, 53 F.4th 711 (1st Cir. 2022).................... 14

*McBean v. City of New York*,
  233 F.R.D. 377 (S.D.N.Y.2006)..................................................................... 9

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05-11148,
  2009 WL 2408560 (D. Mass. Aug. 3, 2009) ................................................ 16

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010) .......................... 18

*Roberts v. TJX Companies, Inc.*, No. 13-cv-13142,
  2016 WL 8677312 (D. Mass. Sept. 30, 2016)....................................... 10, 15, 16

*Saunders v. Hearst Television, Inc.*, No. 23-CV-10998-RGS,
  2024 WL 126186 (D. Mass. Jan. 11, 2024)................................................... 18

*Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K,
  2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ............................................... 12

*Sparks v. Mills*,
  626 F. Supp. 3d 131 (D. Me. 2022)................................................................ 20

*Sutton v. Jordan's Furniture, Inc.*,
    229 N.E.3d 1091 (Mass. 2024)................................................................. 18

*Venegas v. Global Aircraft Service, Ins.*, No. 2:14-cv-249-NT,
    2017 WL 2730025 (D. Me. June 26, 2017)............................................. 19

*Witt v. CoreLogic SafeRent, LLC*, No. 3:15-CV-386,
    2018 WL 1558553 (E.D. Va. Mar. 22, 2018)........................................ 16

**Rules**

Fed. R. Civ. P. 12(b) ................................................................................... 3

Fed. R. Civ. P. 23(b)(3)................................................................................ 4

Fed. R. Civ. P. 23(h) ................................................................................... 8

**Statutes**

18 U.S.C. § 2710(c)(2)(C) .............................................................. 8, 17, 18

18 U.S.C. § 2710(c)(3)................................................................................. 6

28 U.S.C. § 1715 ......................................................................................... 5

9 U.S.C. § 16(a) .......................................................................................... 3

I.    **INTRODUCTION**

As detailed in the concurrently filed Memorandum in Support of Motion for Final Approval of Class Action Settlement, Plaintiff Anna Anca ("Plaintiff" or "Settlement Class Representative") has reached a Settlement with Defendants America's Test Kitchen, LP, America's Test Kitchen, Inc. and Jackie Ford ("ATK" or "Defendants") (collectively with Plaintiff, the "Parties") that provides significant benefits to Settlement Class Members.[1] More specifically, the Settlement requires ATK to remove all Meta Pixels embedded in any webpage on ATK's websites (including www.americastestkitchen.com) accessible in the United States that include video content and prohibits ATK from possessing "personally identifiable information" ("PII") (as that term is defined in the Video Privacy Protection Act ("VPPA")) of Settlement Class Members generated by Meta Pixels, thereby providing Settlement Class Members with valuable injunctive relief - indeed, all injunctive relief obtainable under the VPPA.

As compensation for their efforts in successfully litigating this action and consistent with the cap on Class Counsel's fee request set by the Settlement Agreement with ATK,[2] Class Counsel respectfully requests attorneys' fees of $300,000 and reimbursement of Class Counsel's out-of-pocket litigation costs of $7,092.08, to be paid by ATK. The fee request is supported by a lodestar analysis, as Class Counsel has accumulated a combined lodestar of $425,396.50 to date (rendering the requested fee award a negative multiplier of .71 on Class Counsel's lodestar), with additional work yet to be performed to bring the Settlement through final approval. As detailed more fully herein, the requested attorneys' fees and litigation costs are fair and reasonable based on, *inter*

---

[1] *See* Class Action Settlement Agreement (Doc No. 56-1) (the "Settlement"). Unless otherwise indicated, capitalized terms herein refer to and have the same meaning as in the Settlement.

[2] The Settlement Agreement caps any fee request at $300,000 and any request for reimbursement of expenses at $10,000. Settlement Agreement at ¶ 8.1.

*alia*, the common benefits conferred upon the Class; the skill, time and effort required to obtain such benefits; the complex legal issues and technical matters presented; the contingent nature of the representation; the risks assumed; customary fees and awards in similar actions; and the favorable response from the Settlement Class. Class Counsel's fee request is also appropriate pursuant to the fee-shifting provision of the VPPA.

Plaintiff and Class Counsel also seek a service award for Plaintiff in the amount of $2,500 in recognition of her role as the Settlement Class Representative in prosecuting the litigation on behalf of the Settlement Class. This request is modest, fully justified by the law and the work performed by Plaintiff in this case, and consistent with service awards approved in similar class action settlements.

Thus, for the reasons stated herein, Class Counsel and Plaintiff respectfully request that the Court approve the requested attorneys' fees, litigation costs, and service award.

## II.     RELEVANT BACKGROUND

### A.     Overview of the Litigation.

Prior to filing the instant Action, Plaintiff's counsel conducted a thorough investigation as to the factual and legal merits of the claims and possible defenses, the proper measure of damages, and the likelihood of class action certification. Doc No. 56 ("Bates Decl. I") at ¶ 4.

On July 18, 2022, Plaintiff filed a putative class action complaint against ATK in Massachusetts Superior Court for Suffolk County alleging violations of the VPPA. *Id*. at ¶ 5. ATK removed the case to this Court on August 18, 2022. Following removal, Defendants filed a motion to dismiss, along with a supporting memorandum of law and declarations. Doc Nos. 22-25. On October 21, 2023, Plaintiff filed an Amended Class Action Complaint (the "Amended Complaint"). Doc No. 26. The material allegations of the Amended Complaint center on ATK's

alleged disclosure of its subscribers' PII, as defined under the VPPA, to Meta without consent via the Pixel, a business advertising and analytical tool offered by Meta, that ATK chose to embed on its websites. Bates Decl. I at ¶ 6.

On November 10, 2022, Defendants filed a motion to compel arbitration, or, alternatively, to dismiss the Amended Complaint pursuant to Rule 12(b)(1) and (6). Doc No. 31; *see also* Doc Nos. 32-34 (supporting materials). Plaintiff opposed that motion (*see* Doc Nos. 36-37), and Defendants filed a reply (*see* Doc Nos. 38-39). Bates Decl. I at ¶ 6.

On June 30, 2023, the Court denied Defendants' motion to compel arbitration, or, alternatively, to dismiss the Amended Complaint in its entirety. Doc No. 45. Thereafter, Defendants filed a Notice of Appeal, commencing an interlocutory appeal of this Court's order pursuant to 9 U.S.C. § 16(a). Doc No. 48. Around this same time, Defendants' Counsel presented Plaintiff's Counsel with information related to ATK's financial condition, which called into question ATK's ability to satisfy an adverse monetary judgment. Bates Decl. I at ¶ 8.

On July 24, 2023, the First Circuit Court of Appeals issued a "Case Opening Notice." Bates Decl. I at ¶ 9. Following commencement of the appeal, and pursuant to the First Circuit's Civil Appeals Management Program ("CAMP"), the Parties participated in a mediation session on August 24, 2023, overseen by the First Circuit's Settlement Counsel, the Honorable Patrick J. King. *Id*. at ¶ 10. While no agreement was reached on that date, the Parties agreed to continue settlement negotiations through the First Circuit's Settlement Counsel. *Id*. at ¶ 11. In light of the ongoing settlement discussions, ATK moved for and was granted an extension of time to file its opening brief. *Id*.

Following their initial mediation session, the Parties exchanged informal discovery regarding the merits of the case, class certification, ATK's lack of insurance coverage, and ATK's

financial status and inability to fund a class action settlement under Fed. R. Civ. P. 23(b)(3). The Parties then participated in a second mediation session before Judge King on September 27, 2023. Again, the Parties were unable to reach a resolution at that time but agreed to continue settlement negotiations through the First Circuit's Settlement Counsel. Bates Decl. I at ¶¶ 12-13.

On October 2, 2023, after continued settlement negotiations facilitated by Judge King, the Parties reached an agreement in principle to settle this Action. *Id*. at ¶ 14. As such, the Parties jointly moved to stay the appeal, which the First Circuit granted on October 30, 2023. *Id*. at ¶ 15.

### B.    Preliminary Approval of the Settlement

After reaching the settlement agreement in principle, the Parties continued negotiating all material terms to Settlement Agreement, and on December 7, 2023, Plaintiff filed a Notice of Settlement on Appeal and Unopposed Motion for Indicative Ruling to Effect Terms of Class Action Settlement (Doc No. 53), along with an Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc No. 54), a supporting memorandum of law (Doc No. 55) and Counsel's declaration (Doc No. 56). On January 9, 2024, this Court entered an order finding that "if the case is remanded to this Court by the First Circuit Court of Appeals, it will GRANT the relief requested." (Doc No. 58).

On January 12, 2024, the First Circuit Court of Appeals granted Plaintiff's Unopposed Motion for Limited Remand After Indicative Ruling, remanding this Action to this Court for the purpose of granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement and taking all other steps necessary to implement the Settlement.

On March 11, 2024, this Court granted preliminary approval of the Settlement (Doc No. 62 ("PAO")), holding, *inter alia*:

- "[T]he Court will likely be able to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Settlement Class";

- "[T]he Settlement substantially fulfills the purposes and objectives of the class action and provides beneficial relief to the Settlement Class, especially considering the risks and delay of continued litigation"; and

- "[T]he Settlement Agreement (a) is the result of arm's-length negotiations involving experienced counsel, with the assistance of mediator the Honorable Patrick King; (b) is sufficient to warrant notice of the Settlement and the Final Approval Hearing to the Settlement Class; (c) meets all applicable requirements of law, including Federal Rule of Civil Procedure 23 and the Class Action Fairness Act ('CAFA'), 28 U.S.C. § 1715; and (d) is not a finding or admission of liability by Defendants."

PAO at ¶ 3.[3] In addition, the Court concluded it likely will certify the Settlement Class after finding that the conditions of Rule 23(a) and (b)(2) are satisfied. *See id.* at ¶¶ 4-7. The Court also appointed Plaintiff as Class Representative and Carney Bates & Pulliam PLLC as Class Counsel. *Id.* at ¶ 8. The Court appointed Kroll Settlement Administration LLC as Settlement Administrator. *Id.* at ¶ 10.

### III.  SUMMARY OF THE SETTLEMENT

#### The Settlement Class

The Settlement requires ATK to do the following: (1) undertake the remedial measures described below; (2) be bound by the injunctive relief described below; (3) pay all costs of the class notice and administration; (4) pay any Service Award to Plaintiff approved by the Court of no more than $2,500.00; and (5) pay any attorneys' fees awarded by the Court not to exceed $300,000.00 and any litigation costs award not to exceed $10,000.00. The Settlement does not release any Settlement Class Member's claim for damages or other monetary relief. *See* Settlement Agreement at ¶1.18.

---

[3] In addition, the Court entered a Memorandum and Order on Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement on February 14, 2024 granting the motion and providing additional findings. Doc No. 61.

A.    **The Settlement Class Encompasses Everyone Injured by the Privacy Intrusions Plaintiff Alleges Within the Statute of Limitations Period.**

The Settlement Agreement defines the Rule 23(b)(2) "Settlement Class" as:

> all individuals residing in the United States who were Facebook account holders and subscribers to Defendants' digital services during the Class Period, and who requested or obtained any videos on any America's Test Kitchen website while an active Facebook account holder during the Class Period.

*See* the "Settlement Agreement at ¶ 1.23. Excluded from the Settlement Class are (1) any judge presiding over this Action and members of their families; (2) Defendants, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; and (3) the legal representatives, successors, or assigns of any such excluded persons." *Id.* at ¶ 1.23. The "Class Period" is defined as "the period from July 18, 2020,[4] to and through the date of Preliminary Approval." *Id.* at ¶ 1.3.

B.    **The Settlement Provides for Significant Remedial Measures and Injunctive Relief.**

Pursuant to the Settlement, ATK agreed that, within 45 days of the Preliminary Approval Order, (1) it would remove all Meta Pixels embedded in any webpage on Defendants' websites (including www.americastestkitchen.com) accessible in the United States that include video content, and (2) it would not possess "personally identifiable information" ("PII") (as that term is defined in the VPPA) of Settlement Class Members generated by Meta Pixels. *Id.* at ¶ 2.1. As set forth in the Declaration of Evan Silverman ("Silverman Decl."),[5] ATK timely complied with each of these requirements. *Id.* at ¶ 4. The Settlement further provides that ATK shall not resume

---

[4] The VPPA has a two-year statute of limitations period. 18 U.S. Code § 2710(c)(3). Thus, the start of the Class Period, July 18, 2020, is two years prior to the filing of the complaint in this Action. *See* Doc No. 1.

[5] The Silverman Decl. is Exhibit A to the Bates Declaration.

operation of the Pixel on any webpage of its websites accessible in the United States that include video content. Settlement Agreement at ¶ 2.1. Notwithstanding the above, ATK may seek relief from this injunction upon amendment or repeal of the VPPA or upon implementation of a VPPA-compliant consumer consent form. *Id.* at ¶ 2.2.

C.      **The Settlement Release Is Adequately Tailored in Scope and Does Not Release Settlement Class Members' Damages Claims.**

In exchange for undertaking the above described relief, ATK will receive a release of "any claim, liability, right, demand, suit, matter, obligation, action, or causes of action, of every kind and description, that the Releasing Parties have or could have presented or asserted against Defendants regarding the alleged disclosure of the Settlement Class Members' personally identifiable information and video viewing behavior to any third party, including all claims that were brought or could have been brought in the Action relating to the alleged disclosure of the Settlement Class Members' personally identifiable information and video viewing behavior to any third party. *Id.* at ¶ 1.18.

Importantly, however, because this settlement is pursuant to Rule 23(b)(2), the Released Claims expressly "*do not include claims for damages or other monetary relief*" and "do not include the right of any Settlement Class Member or any of the Released Parties to enforce the terms of the settlement contained in this Settlement Agreement." *Id.* (emphasis added).

D.      **Plaintiff's Request for (i) Attorneys' Fees and Litigation Costs and (ii) a Service Award.**

The Settlement Agreement provides that Class Counsel may seek an award of reasonable attorneys' fees, to be paid by ATK, in an amount not to exceed $300,000.00, as well as reimbursement of out-of-pocket litigation expenses not to exceed $10,000. The Settlement Agreement also provides that Class Counsel may seek a service award for the Class Representative in an amount not to exceed $2,500. *See* Settlement Agreement at ¶¶ 8.1, 8.2. In accord with the

foregoing provisions, Class Counsel is seeking (i) attorneys' fees of $300,000, (ii) reimbursement of litigation costs of $7,092.08, and (iii) a $2,500 service award for the Class Representative.

## IV.    THE REQUESTED AWARD OF ATTORNEYS' FEES IS REASONABLE AND APPROPRIATE.

It is well-established that counsel in a successful class action lawsuit may petition the court for compensation relating to any benefits to the class that result from the attorneys' efforts. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980). Rule 23(h) of the Federal Rule of Civil Procedure expressly provides that a "court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In addition, the VPPA expressly provides that this Court may award "reasonable attorneys' fees and other litigation costs reasonably incurred" in bringing a civil action such as this. 18 U.S.C. § 2710(c)(2)(C).

This is a Rule 23(b)(2) class action settlement with injunctive relief and no common fund, where any attorneys' fees and costs awarded by this Court will be paid by Defendant ATK pursuant to the Settlement Agreement. "The attorneys' fees in this case will not be awarded from a common fund created for the class as a whole." *Jermyn* v. *Best Buy Stores, L.P.,* 2012 WL 2505644, at *9 (S.D.N.Y. June 27, 2012). Thus, regardless of the size of the fee award, it does not reduce or alter the injunctive-relief benefits conferred upon the Class as detailed herein. Moreover, the cap on Class Counsel's fee request was negotiated only *after* agreement had been reached on the substantive terms of the Settlement benefiting the Class and in arms-length negotiations mediated by the Honorable Patrick King. Declaration of Hank Bates in support of Plaintiff's Motions for Final Approval of Class Action Settlement and for Award of Attorneys' Fee, Litigation Costs, and a Service Award ("Bates Decl. II") at ¶ 48. "Under these circumstances, the danger of conflicts of interest between attorneys and class members is diminished." *Jermyn,* 2012 WL 2505644, at *9

(quoting *In re Sony SXRD Rear Projection TV Class Action Litig.,* 2008 U.S. Dist. LEXIS 36093, at *43 (S.D.N.Y. May 1, 2008)). And in such cases, "the Court's fiduciary role in overseeing the award is greatly reduced." *McBean v. City of New York,* 233 F.R.D. 377, 392 (S.D.N.Y.2006). Additionally, "[t]he negotiation of fee agreements is generally encouraged." *In re Sony SXRD Rear Projection TV Class Action Litig.,* 2008 WL 1956297, at *15 (S.D.N.Y. May 1, 2008) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee.")). "Nevertheless, a court must still 'assess the reasonableness of the fee award, particularly because practical realities suggest that generally 'a defendant is interested only in disposing of the total claim asserted against it,' and not in 'the allocation between the class payment and the attorneys' fees.'" *Id.* (quoting *In re GMC Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 819-820 (3d Cir. 1995)).

In the First Circuit the reasonableness of fees requested under the common benefit doctrine is analyzed using the six factors set out in *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 507 (2d Cir. 2000)): "(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations." *In re Neurontin Mktg. & Sales Practices Litig.,* 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (citing *In re Lupron Mktg. & Sales Practices Litig.,* 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005), citing *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir. 2000)).

A.      **The *Goldberger* Factors Support Class Counsel's Requested Fee Award.**

Applying the guideposts referenced above, Class Counsel's fee request is fair and reasonable under a common benefits analysis. *See e.g., Roberts v. TJX Companies, Inc.*, No. 13-cv-13142, 2016 WL 8677312, at *11 (D. Mass. Sept. 30, 2016).

1.      **The Results Achieved Through Settlement and the Number of Class Members Who Will Benefit from the Settlement Support the Requested Fee.**

Class Counsel secured an excellent result for the Settlement Class that tracks the injunctive relief that could have been achieved following a successful trial. Specifically, ATK agreed to (i) remove all Pixels embedded in any ATK website accessible in the United States that includes video content, and (ii) implement and complete a process to ensure ATK does not possess "personally identifiable information" (as that term is defined in the VPPA) of Settlement Class Members generated by the Pixel. ATK cannot resume the challenged conduct without obtaining Court approval to do so and only if the VPPA is repealed or amended or ATK implements a VPPA-compliant consumers consent form.   Importantly, Class Counsel secured this relief without releasing any Settlement Class Member's claim for damages or other monetary relief. *See* Bates Decl. II at ¶ 48. Moreover, ATK agreed to implement this injunctive relief expeditiously within 45 days of preliminary approval, which it has done. Silverman Decl. at ¶ 4. This is meaningful, lasting relief from which Settlement Class Members will continue to benefit. *See, e.g.*, *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 346 (D. Mass.), *aff'd,* 809 F.3d 78 (1st Cir. 2015) ("Injunctive relief has been recognized as a meaningful component of a settlement agreement, particularly where it mimics the injunctive relief that the plaintiffs could achieve following trial."); *Gordan v. Mass. Mutual Life Ins. Co.*, No. 13-cv-30184-MAP, 2016 WL 11272044, at *1 (D. Mass. Nov. 3, 2016) (finding the affirmative relief achieved in addition to the monetary benefits "make the true value of the settlement far higher.").

In short, the business practice changes secured through Settlement were achieved through the work and skill of Class Counsel and will benefit all Settlement Class Members without the need to take any affirmative action like submitting a claim form, while avoiding the risk and uncertainty of further litigation and a possible trial. Accordingly, consideration of this factor weighs in favor of Class Counsel's fee request. *Gordan*, 2016 WL 11272044, at *2.

### 2.    The Skill and Experience of Counsel Support the Requested Fee.

The prosecution and management of a complex class action requires unique legal skills and abilities, as do claims applying the VPPA to operation of the Pixel. As demonstrated by Class Counsel's declarations and firm resumes, Class Counsel are experienced and skilled practitioner firms in the consumer protection class action field and have long and successful track records in such cases. *See* Bates Decl. II at ¶¶ 40, 46; Bates Decl. I at ¶¶ 45-55 and Exs. 3 and 4 thereto. Class Counsel's willingness and ability to undertake complex and difficult cases such as this and their commitment to this litigation added valuable experience to this litigation, as well as leverage in the settlement negotiations. *See Bezdek*, 79 F. Supp. 3d at 350 (finding skill of lawyers "nationally known for and greatly experienced in representing plaintiffs" in class action lawsuits weighed in favor of fee award).

The quality of the work performed by Class Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition. *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) ("Defendants' attorneys . . . consistently put plaintiffs' counsel through the paces. All counsel consistently demonstrated considerable skill and cooperation to bring this matter to an amicable conclusion."). Here, ATK has been represented by highly experienced lawyers throughout the litigation from Ropes & Gray, LLP, a well-respected law firm with 14 offices on three continents and more than 1,500 attorneys

11

and legal professionals. *See* https://www.ropesgray.com/en/about. Notwithstanding this formidable opposition, Class Counsel developed a strong case and negotiated settlement terms that are highly favorable to Settlement Class Members. *See Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005) ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation."). Accordingly, this factor further supports the requested attorneys' fees.

### 3. The Amount of Time Devoted to the Litigation by Class Counsel Supports the Requested Fee.

The extensive time and effort expended by Class Counsel in prosecuting the litigation and achieving the Settlement also establish that the requested fee is justified and reasonable. *See Hill v. State St. Corp.*, No. CIV.A. 09-12146-GAO, 2015 WL 127728, at *19 (D. Mass. Jan. 8, 2015).

To date, Class Counsel has devoted a total of 620.75 hours in this case, for a total lodestar of $425,396.50, that significantly exceeds the fee request of $300,000.[6] *See* Bates Decl. II at ¶¶ 51-56. These amounts are reasonable for complex class actions of this type and were compiled from contemporaneous time records maintained by each individual attorney who performed work on the case and are reasonable for complex class actions of this type. *See id.*

Class Counsel vigorously litigated this case by performing such tasks as: (i) conducting a thorough pre-suit investigation, including detailed forensic analysis of ATK's websites and the Meta Pixel activity therein, that resulted in the preparation of a detailed complaint; (ii) successfully opposing ATK's motion to compel and to dismiss; (iii) gathering Plaintiff's documents and relevant information; (iv) preparing mediation statements; (v) requesting and reviewing relevant

---

[6] This total lodestar does not include the time spent related to this fee motion. Nor does it include any consideration of the additional, future time related to attending the final approval hearing and bringing the settlement approval process to a successful conclusion.

informal discovery during mediation; (vi) participating in two mediation sessions followed by post-mediation negotiations; (vii) achieving a favorable Settlement on behalf of the Settlement Class; and (viii) negotiating comprehensive settlement papers and working with the Settlement Administrator to implement the Notice Program. *See id*. at ¶¶ 19, 32. Moreover, Class Counsel fought hard for the Class at the negotiating table. The negotiations were conducted at arms' length over a period of many weeks. *See* Bates Decl. II at ¶¶ 10-15. The Parties participated in two mediation sessions with Judge King, as well as additional post-mediation negotiations. *See id*. The negotiations were hard fought, and counsel for all Parties participated vigorously with competing agendas. *Id*.

Class Counsel's hourly rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11 (1984). Here, the relevant community is the Boston legal market. Class Counsel's hourly rates in this Action range from $425 for associates and from $770 to $950 for partners.[7] *See* Bates Decl. II at ¶ 52-54 and Ex. A.  These hourly rates are comparable to rates charged by attorneys with similar experience, skill, and reputation, for similar services in complex litigation in the Boston legal market, and comparable rates have previously been approved as reasonable in this district. *See* Bates Decl. II at ¶ 55; *see also Ford v. Takeda Pharms. U.S.A., Inc.*, No. 1:21-CV-10090-WGY, 2023 WL 3679031, at *2 (D. Mass. Mar. 31, 2023) (approving hourly rates of $1,370 for attorneys with at least 25 years of experience; $1,165 for attorneys with 15–24 years of experience; $840 for attorneys with 5–14 years of experience; $635 for attorneys with 0–4 years of experience; and $425 for paralegals and law clerks); *Lionbridge Techs., LLC v. Valley Forge*

---

[7] Due to the negative multiplier of .71, the effective rates under the fee request of $300,000 are significantly lower.

*Ins. Co.*, No. CV 20-10014-PBS, 2021 WL 8999590, at *1 (D. Mass. May 18, 2021), *aff'd*, 53 F.4th 711 (1st Cir. 2022) (noting defense counsel charged hourly rates for partners of $1,475 and associates ranged from at least $700 to $900).

In sum, Class Counsel's work on this matter secured significant injunctive relief and remedial measures for the benefit of the Settlement Class in spite of Defendant's precarious financial position. Thus, Class Counsel's efforts demonstrate that they vigorously and zealously represented the Class.

### 4.   The Complexity and Duration of the Litigation Support the Requested Fee.

The complexity and duration of the litigation also weigh in favor of the requested fee. The VPPA claims in this action involve complicated issues concerning ATK's business and practices related to its use of the Meta Pixel code and consumers' privacy rights. Thus, Class Counsel was required to develop an understanding of ATK's use of Pixel technology, its video content, class size, class damages, and more. Throughout the litigation, Defendant has vigorously denied Plaintiff's allegations of wrongdoing, filing a motion to compel arbitration and to dismiss and appealing this Court's order denying its motion to compel arbitration. Plaintiff anticipates that ATK would continue to defend its position should the case be litigated further. Moreover, claims applying the VPPA to operation of the Pixel are still relatively novel in that Class Counsel is unaware of a Pixel-based VPPA case proceeding to the summary judgment stage, let alone trial.

While formal discovery in this litigation had not yet commenced, the Parties informally exchanged information to allow Class Counsel to assess the strengths and weaknesses of the VPPA claims, as well as ATK's defenses, and to make an informed assessment of the value of Plaintiff's claims. For example, the Parties exchanged significant information related to the size and nature of the Class, ATK's lack of insurance coverage and its inability to withstand a classwide monetary

judgment. Bates Decl. II at ¶¶ 8, 12. Thus, notwithstanding the novelty and complexities of Plaintiff's claims and ATK's limited financial condition, Class Counsel were able to skillfully and efficiently negotiate a successful resolution on behalf of the Settlement Class. *See id.* at ¶¶ 46-50. Accordingly, the magnitude and complexity of the issues presented and the duration of the litigation support the conclusion that the requested fee is fair and reasonable.

### 5.   The Risks of the Litigation Support the Requested Fee.

A case undertaken on a contingent fee basis requires commitment of time and resources in the face of significant risks of loss and/or delay. As such, the risk of the litigation is a key factor in determining an appropriate fee award. *See Roberts*, 2016 WL 8677312, at *13 ("[M]ost importantly, Class Counsel took the case on a contingency fee basis, assuming significant risk in litigating the case."); *Hill*, 2015 WL 127728, at *18 ("consider[ing] . . . contingency risk in awarding attorneys' fees" when counsel "litigated the Action on a fully contingent basis and were exposed to the risk that they might obtain no compensation for their efforts on behalf of the class").

Here, in pursuing this litigation on a contingency basis, Class Counsel understood that it was undertaking an expensive and complex litigation with no guarantee of receiving compensation for the enormous investment in time and money that the case would require. Bates Decl. II at ¶ 45.

Moreover, the risks involved in this litigation were plentiful. Plaintiff faced very significant risks to withstanding a challenge to the pleadings, to certifying and maintaining a class, and eventually to proving liability and damages on relatively untested VPPA claims at trial. *See* Plaintiff's Memorandum in Support of Motion for Final Approval. In addition, Class Counsel faced substantial risks and uncertainties related to ATK's financial condition, which called into question its ability to satisfy an adverse monetary judgment and revealed that its ability to fund a class settlement would likely weaken over time. *See* Bates Decl. II at ¶ 34. Absent the Settlement,

Plaintiff would have to conduct formal discovery, which would involve the uncertain process of obtaining relevant information from ATK and pursuing subpoenas against third parties like Meta, substantially increasing litigation costs. Thus, formal discovery, pretrial motion practice, and trial would involve potentially several additional years of litigation and could deprive the Class of any relief due to ATK's financial condition.

Under these circumstances, the requested fee is fully appropriate.

**6.**      **Awards in Similar Cases Support the Requested Fee.**

Courts routinely award attorneys' fees in Rule 23(b)(2) settlements. *See Commissioners of Pub. Works of City of Charleston v. Costco Wholesale Corp.*, No. 2:21-CV-42-RMG, 2024 WL 1004697, at *5 (D.S.C. Mar. 8, 2024) (awarding attorneys' fees and costs of $1.9 million in Rule 23(b)(2) settlement); *Witt v. CoreLogic SafeRent, LLC*, No. 3:15-CV-386, 2018 WL 1558553, at *4 (E.D. Va. Mar. 22, 2018) (awarding attorneys' fees of $803,700.00 in Rule 23(b)(2) settlement); *Berry v. Schulman*, 807 F.3d 600, 619 (4th Cir. 2015) (affirming district court's award of attorneys' fees in Rule 23(b)(2) settlement).

Moreover, here, Class Counsel's fee request of $300,000 in attorneys' fees reflects a *negative* lodestar multiplier of .71. In contrast to the negative multiplier requested here, positive multipliers are commonly awarded in class action settlements in this district and the First Circuit. *See, e.g., Bettencourt v. Jeanne D'Arc Credit Union*, No. 17-CV-12548-NMG, 2020 WL 3316223, at *3 (D. Mass. June 17, 2020) (finding multiplier of 1.20 was "well within the range of multipliers typically allowed by this Court (1x to 2.7x)"); *Roberts*, 2016 WL 8677312, at *13 (court approved a multiplier of 1.96); *Bacchi,* 2017 WL 5177610, at *5 (approving multiplier of 1.31); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05-11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (approving lodestar multiplier of about 8.3); *In re Relafen*,

16

231 F.R.D. at 82 (noting that multipliers have ranged from 1.0 to 4.0 and concluding that a multiplier of 2.02 was appropriate).

### 7.    Public Policy Considerations Support the Requested Fee.

"Class action plaintiffs' attorneys provide an invaluable service by aggregating the seemingly insignificant harms endured by a large multitude into a distinct sum where the collective injury can then become apparent." *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 463 (D.P.R. 2011). Here, given the risk and expense in pursuing class members' VPPA claims, "it would likely not be economical for an individual Class Member to pursue such litigation on their own." *Id*. Moreover, the VPPA claims seek to redress consumers' fundamental privacy rights. Thus, this class action serves important public policy of ensuring that consumers' privacy rights be protected even where individual damages are minimal. Thus, the requested fee here serves an important public policy of ensuring that consumer claims can be pursued by experienced and competent counsel.

### 8.    The Reaction of the Class Supports the Requested Fee.

To date, no Settlement Class Member has objected to any portion of the Settlement, including Class Counsel's fee request. Declaration of Andrea R. Dudinsky of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement ("Dudinsky Decl.") at ¶ 10. Thus, to date, the reaction of the Settlement Class has been favorable. *See, e.g., Bezdek*, 79 F. Supp. 3d at 351.

### B.    The Requested Fee Is Appropriate Under the VPPA.

As noted above, the VPPA expressly provides that this Court may award "reasonable attorneys' fees and other litigation costs reasonably incurred" in bringing a civil action such as this. 18 U.S.C. § 2710(c)(2)(C); *see also Saunders v. Hearst Television, Inc.*, No. 23-CV-10998-

RGS, 2024 WL 126186, at *4 (D. Mass. Jan. 11, 2024) (noting that VPPA permits the recovery of attorneys' fees and costs). Where a court analyzes a fee request under a statutory fee-shifting provision such as that contained in the VPPA, a court considers the reasonableness of counsel's lodestar. *See* e.g., *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550, 130 S. Ct. 1662, 1671, 176 L. Ed. 2d 494 (2010); *Sutton v. Jordan's Furniture, Inc.*, 229 N.E.3d 1091, 1104 (Mass. 2024). Here, as detailed above, Class Counsel's lodestar and hourly rates are reasonable. See supra. Moreover, the requested fee of $300,000 in this action falls well below Class Counsel's lodestar of $425,396.50. Thus, Class Counsel's fee request is also appropriate pursuant to the statutory fee-shifting provision of the VPPA.

In sum, whether analyzed under a common benefits method or a lodestar method, Class Counsel's fee request is fair and reasonable.

## V. CLASS COUNSEL'S LITIGATION EXPENSES ARE JUSTIFIED AND SHOULD BE REIMBURSED.

The VPPP allows for and courts typically permit counsel to recover reasonable out-of-pocket expenses. 18 U.S.C. § 2710(c)(2)(C); *Hill*, 2015 WL 127728, at *20. Here, Class Counsel have incurred a total of $7,092.08 in out-of-pocket litigation expenses. *See* Bates Decl. II at ¶ 57. More particularly, over the course of this litigation, Class Counsel incurred the following costs, among others: filing fees, forensic investigation, computer research, travel costs, and Federal Express. *Id*. These expenses were reasonably incurred in the prosecution and settlement of this Action. *Id.* Accordingly, reimbursement of these out-of-pocket litigation expenses is appropriate. *See Bezdek*, 79 F. Supp. 3d at 351–52 (finding costs associated with mediation, legal research, filing fees, consultation with experts, photocopying, and travel to hearings, depositions, and meetings reasonable and awarding $61,674.44 in incurred litigation expenses); *Hill*, 2015 WL 127728, at *21 (finding costs for experts, creating and maintaining an electronic database for

review of documents, conducting online legal and factual research, court fees, court reporters, out-of-town travel, and copying were "the types of expenses that are necessarily incurred in litigation of this type" and awarding $995,297.89 in litigation costs); *In re Compact Disc Minimum Advertised Price Antitrust Litig.,* 370 F. Supp. 2d 320, 322 (D. Me. 2005) (awarding $119,185.15 in costs "for such items as overtime, telephone, fax, postage, FedEx, photocopying, court fees, service of process, etc.").

## VI.    THE REQUESTED SERVICE AWARD IS REASONABLE.

"A named plaintiff is a necessary component of any class action, and thus, a service award may be appropriate to induce an individual to take part in the suit." *Venegas v. Global Aircraft Service, Ins.*, No. 2:14-cv-249-NT, 2017 WL 2730025, at *4 (D. Me. June 26, 2017). Service awards "serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, the public nature of a collective action filing, and any other burdens they sustain." *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-cv-10219-JGD, 2017 WL 6460244, at *2 (D. Mass. June 8, 2017); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. at 98.

Plaintiff has been engaged with this case from the outset, she has been in regular contact with counsel and aided their investigation. *See* Bates Decl. II at ¶ 60. Specifically, Plaintiff helped counsel draft the complaint and the amended complaint by providing details of her experience and relevant facts and events; she reviewed and provided documents and information related to her ATK subscription and Facebook account; she has communicated throughout the litigation with Class Counsel; and she attended the two mediation sessions and oversaw the settlement of this Action and the terms negotiated. *See id*. But for Plaintiff's efforts, and her desire and willingness to stick with this case and get relief for others, the Settlement Class here would have received

nothing. An incentive award of $2,500 to Plaintiff is reasonable and fair and within the range of awards approved in other class actions. *See, e.g., Carlson v. Target Enter., Inc.*, 447 F. Supp. 3d 1, 5 (D. Mass. 2020) (approving an incentive award of $7,500 to named plaintiff); *Sparks v. Mills*, 626 F. Supp. 3d 131, 140 (D. Me. 2022) (approving service awards of $2,000 each for the two class representatives in recognition of their "essential service").

**VII.  CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that this Court grant this motion and (i) award Class Counsel attorneys' fees of $300,000.00; (ii) award reimbursement of out-of-pocket litigation expenses of $7,092.08 to Class Counsel; and (ii) award a service award of $2,500 to Plaintiff.

Dated:  May 1, 2024

Respectfully submitted,

*/s/ Hank Bates*

Hank Bates (*pro hac vice*)
Lee Lowther (*pro hac vice*)
Courtney Ross Brown (*pro hac vice*)
CARNEY BATES & PULLIAM, PLLC
One Allied Drive, Suite 1400
Little Rock, AR 72202
Telephone: (501) 312-8500
Facsimile: (501) 312-8505
Email: hbates@cbplaw.com
Email: llowther@cbplaw.com
Email: cbrown@cbplaw.com

Elizabeth Ryan (BBO No. 549632)
BAILEY & GLASSER LLP
176 Federal Street, 5th Floor
Boston, MA 02110
Telephone: (617) 439-6730
Facsimile: (617) 951-3954
Email: eryan@baileyglasser.com

*Attorneys for Plaintiff Anca Adams and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Hank Bates, hereby certify that this document was filed on May 1, 2024, via the ECF system, and was sent electronically on that date to the Parties' counsel of record.

By: _/s/ Hank Bates_____
Hank Bates